# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 15-2622

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Thirty-two thousand eight hundred twenty dollars and fifty-six cents ($32,820.56)
in United States Currency,

*Defendant,*

Carole Hinders; Mrs. Lady's Inc.,

*Claimants - Appellants.*

———————————————

No. 15-2624

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Thirty-two thousand eight hundred twenty dollars and fifty-six cents ($32,820.56)
in United States Currency,

*Defendant,*

Carole Hinders; Mrs. Lady's Inc.,

*Claimants - Appellants.*

_____

Appeals from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: February 9, 2016
Filed: September 30, 2016

_____

Before SMITH and COLLOTON, Circuit Judges, and ERICKSON,[1] District Judge.

_____

COLLOTON, Circuit Judge.

In May 2013, the Internal Revenue Service ("IRS") seized $32,820.56 from Carole Hinders's business bank account based on allegations that Hinders had unlawfully "structured" deposits to avoid federal currency reporting requirements. The government then filed a civil forfeiture complaint against the seized currency. Hinders responded by filing claims to the seized property.

Over a year later, the government moved to dismiss the case, and the district court[2] dismissed the action without prejudice. Hinders moved for attorney fees, costs,

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

[2]The Honorable Leonard T. Strand, then United States Magistrate Judge for the Northern District of Iowa, now United States District Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

and interest under the Civil Asset Forfeiture Reform Act ("CAFRA"), 28 U.S.C. § 2465(b)(1), and asked the court to dismiss the case with prejudice on a motion to reconsider. The district court denied Hinders's motion for fees under CAFRA and declined to reconsider its prior dismissal without prejudice. Hinders appeals, and we affirm.

I.

Carole Hinders owned and operated Mrs. Lady's, a Mexican restaurant in Arnolds Park, Iowa. The restaurant accepted only cash and checks for payment, and Hinders regularly deposited the restaurant's earnings in the bank. Hinders almost always deposited less than $10,000 at a time but occasionally deposited more than that amount. According to Hinders, she did this on the advice of her mother, who previously managed the bookkeeping for Mrs. Lady's and told Hinders that she could "avoid paperwork at the bank" if she kept deposits under $10,000. This activity caught the attention of the IRS, which investigates persons believed to be "structuring" transactions to evade a bank's legal obligation to report cash transactions exceeding $10,000. *See* 31 U.S.C. §§ 5313(a), 5324(a)(3); 31 C.F.R. § 1010.311.

In May 2013, the IRS seized $32,820.56 from the restaurant's business checking account. Before the seizure, Agent Christopher Adkins, an IRS task force officer, reviewed the restaurant's bank statements from mid-April 2012 through mid-February 2013. While more than $315,000 had been deposited during this period, no individual deposit had exceeded $10,000. A majority of deposits were for amounts between $5,000 and $9,500, and deposits on consecutive business days accumulated to more than $10,000 on multiple occasions.

On the day of the seizure, Agent Adkins interviewed Hinders. According to Adkins, Hinders confirmed that she was aware of the reporting requirement and claimed that she did not break up cash for deposit. Adkins contends that Hinders then

-3-

changed her story after being shown a record of her deposits and admitted that she broke up deposits so that the bank would not have to fill out paperwork. When asked why she did this, Hinders asserted that she thought avoiding paperwork was a good thing and that her mother had advised her to keep deposits below $10,000.

Hinders disputes Adkins's account of the interview. She admits that she broke up deposits to keep them under $10,000 and does not recall denying this fact. She claims that Agent Adkins asked her if she knew of "the $10,000 rule," and she admitted that she did, but says that she was thinking of the internal bank paperwork that her mother had described. Hinders maintains that she did not know that the bank was required to report deposits greater than $10,000 to the IRS.

In October 2013, the government filed a civil forfeiture complaint against the seized property, alleging that it represented proceeds from structuring offenses committed by Hinders in violation of 31 U.S.C. § 5324. Hinders filed two claims to the property, one in her capacity as president of Mrs. Lady's, Inc., and one in her personal capacity. The parties submitted a scheduling order and discovery plan to the court and began discovery.

In October 2014, the IRS issued a policy memorandum that altered its approach to civil forfeiture. The new policy provided as a general rule that the agency no longer would pursue the seizure and forfeiture of funds in structuring cases where the funds were believed to have come from legal sources. A forfeiture in these circumstances would be pursued only in exceptional circumstances and with approval by the Director of Field Operations.

In December 2014, the government moved to dismiss the forfeiture complaint without prejudice. The motion stated that the government wished to exercise its prosecutorial discretion to decline to pursue the case and to allocate its resources elsewhere. The government asserted that the parties had undertaken limited

discovery, that trial was not scheduled to begin for several months, and that Hinders would not be prejudiced by dismissal. Hinders opposed the government's motion. She urged the court to dismiss the case with prejudice, or to deny the motion altogether and allow the case to proceed to trial. She argued that the government would not be able to pursue the case in the future, that the government had no evidence that she violated the law, and that the requested dismissal would cause her prejudice.

The district court granted the motion to dismiss without prejudice. The court found that the government did not seek dismissal to gain a strategic advantage and had offered a plausible reason for seeking dismissal as an exercise of its prosecutorial discretion. The court further found that the dismissal would not result in a waste of judicial time and effort and that the dismissal would not prejudice Hinders. The court retained jurisdiction to determine whether Hinders was entitled to a fee award under CAFRA.

Hinders moved for attorney fees, costs, and interest pursuant to 28 U.S.C. § 2465(b)(1). She argued that she had "substantially prevailed" within the meaning of CAFRA's fee-shifting provision because she had challenged the forfeiture of her property and obtained an order dismissing the complaint. Hinders argued alternatively that if the dismissal without prejudice undermined her request for fees, then the court should reconsider its order and dismiss the complaint with prejudice.

The district court determined that Hinders had not substantially prevailed under CAFRA, because the dismissal without prejudice did not qualify as a material alteration of the legal relationship between the parties. The court therefore determined that Hinders was not entitled to an award of fees, costs, and interest under CAFRA. The court declined to reconsider its dismissal without prejudice because Hinders had waived the argument that she would suffer legal prejudice through a denial of fees under CAFRA. But the court did award Hinders a portion of the requested costs based

on the court's inherent authority.  Hinders appeals both the denial of her motion for fees and the court's dismissal of the case without prejudice.

## II.

### A.

We first address Hinders's contention that she "substantially prevailed" in the district court, and that she is thus entitled to attorney fees, costs, and interest under CAFRA.  CAFRA provides that the United States "shall be liable" for attorney fees, costs, and interest "in any civil proceeding to forfeit property . . . in which the claimant substantially prevails." 28 U.S.C. § 2465(b)(1).  There has been no alteration of the legal relationship between Hinders and the government, because the court's order dismissing the case without prejudice does not preclude the government from refiling an action based on Hinders's alleged structuring offenses.  Hinders argues, however, that she "substantially prevailed," because the district court granted the government's motion to dismiss the case without prejudice, and she recovered the currency that was in dispute.

While the Supreme Court has not addressed CAFRA's fee-shifting provision, the Court has construed similar provisions in other statutes.  In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 601 (2001), the Court addressed fee-shifting provisions in the Fair Housing Amendments Act and the Americans with Disabilities Act, both of which granted district courts discretion to award attorney fees to a "prevailing party."  Construing "prevailing party" as a legal term of art, the Court held that a "material alteration of the legal relationship of the parties" was necessary to permit an award of fees under both statutes. *Id.* at 603-04 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).  A judgment on the merits or a court-ordered consent decree qualified. *Id.* at 604.  But a voluntary change on the part of a

defendant, even if it resulted in the outcome sought by the plaintiff, "lack[ed] the necessary judicial *imprimatur*" to authorize a fee award. *Id.* at 605. The Court thus rejected a "catalyst theory" under which a plaintiff could obtain fees if she achieved a "desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 605.

Hinders argues that the *Buckhannon* standard does not apply here, because CAFRA provides for an award to a plaintiff who "substantially prevails," while *Buckhannon* addressed statutes concerning a "prevailing party." She contends that the term "substantially prevails" requires courts to look to the substance of the result achieved by the claimant. On her view, CAFRA allows an award of fees where a claimant has "largely" prevailed, "even if that is not 'wholly' true as a formal procedural matter." Because the government moved to dismiss the case and returned the seized money to Hinders, she argues that she achieved her desired ends and "substantially prevailed" in the litigation.

In *Buckhannon*, the Court ruled that a "prevailing party"—or what could be termed "a party who prevails"—must secure a "material alteration of the legal relationship" between parties. 532 U.S. at 603-05. CAFRA uses the modifier "substantially," but it still speaks of a party who "prevails." The most natural reading of the CAFRA fee-shifting provision in light of *Buckhannon* retains the core meaning of the term: a party who prevails must obtain a "judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 605. Insofar as "substantially" alters the standard, the Second Circuit rightly observed that many definitions in the legal context suggest that the term refers to "the *amount* or *degree* of recovery necessary to obtain fees—*not* the *method* or *manner* in which the recovery must be obtained." *Union of Needletrades, Indus., & Textile Emps. v. INS*, 336 F.3d 200, 208 (2d Cir. 2003).

Although not dispositive, there is a general practice of treating federal fee shifting statutes consistently, *see Buckhannon*, 532 U.S. at 603 & n.4 (citing *Marek v. Chesny*, 473 U.S. 1, 43-51 (1985) (Appendix to opinion of Brennan, J., dissenting)), and this court seemed to treat "substantially prevailing" as the functional equivalent of "prevailing" in *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003). Where Congress intends to apply a different meaning, it has been able to say so directly. *See* 5 U.S.C. § 552(a)(4)(E)(ii) (defining a party who has "substantially prevailed" as one who obtains a judicial order, an enforceable written agreement or consent decree, or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial"). Like other circuits that have examined the unadorned terms, we see "nothing to suggest that Congress sought to draw any fine distinction between 'prevailing party' and 'substantially prevail.'" *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002), *superseded by statute*, OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524; *see Loggerhead Turtle v. Cty. Council of Volusia Cty.*, 307 F.3d 1318, 1322 n.4 (11th Cir. 2002) (asserting that variations in terminology "are generally deemed inconsequential"); *see also Synagogue v. United States*, 482 F.3d 1058, 1062-63 (9th Cir. 2007) (addressing CAFRA); *United States v. Khan*, 497 F.3d 204, 209 n.7 (2d Cir. 2007) (same).[3]

----

[3]Other circuits have applied the *Buckhannon* standard to cases involving CAFRA's fee-shifting provision without expressly addressing the difference in terminology. *See United States v. Evans*, 561 F. App'x 877, 880-81 (11th Cir. 2014) (per curiam); *United States v. Craig*, 694 F.3d 509, 512 (3d Cir. 2012); *United States v. Huynh*, 334 F. App'x 636, 639 (5th Cir. 2009) (per curiam). Multiple district courts have determined that the *Buckhannon* standard governs CAFRA's fee-shifting provision. *See United States v. 2007 BMW 335i Convertible*, 648 F. Supp. 2d 944, 948-52 (N.D. Ohio 2009); *United States v. Certain Real Prop.*, 543 F. Supp. 2d 1291, 1293-94 (N.D. Ala. 2008); *United States v. $13,275.21, More or Less, in United States Currency*, No. SA-06-CA-171-XR, 2007 WL 316455, at *3-4 (W.D. Tex. Jan. 31, 2007). We have not located any decision that construes the term "substantially prevails" in the way that Hinders proposes.

Hinders argues that CAFRA's legislative history shows that Congress meant to provide for attorney fees in cases like this where the government voluntarily dismisses a case without prejudice. We find the materials unilluminating. Congress enacted CAFRA to make civil forfeiture proceedings fair to property owners and to allow innocent property owners the ability to recover their property and make themselves whole. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1012 n.1 (8th Cir. 2003). But that general purpose is not inconsistent with the textual requirement that a claimant must secure a material alteration of the legal relationship to obtain attorney fees. The relevant committee report sheds no light: the fee-shifting provision of CAFRA was not one of the core reforms listed. H.R. Rep. No. 106-192, at 11-19 (1999). While one representative on the House floor did refer to the fee-shifting provision as a key aspect of CAFRA's reforms, his remarks did not address the intended definition of the term "substantially prevails." *See* 146 Cong. Rec. H2047 (daily ed. Apr. 11, 2000) (statement of Rep. Hyde).

Hinders also suggests that *Buckhannon* and related cases address only whether fees may be awarded to a prevailing *plaintiff*, while claimants in civil forfeiture cases are akin to civil *defendants* because they seek only the return of their property rather than enforceable judgments. The relevant statutes do not support the suggested distinction. Although *Buckhannon* involved a plaintiff seeking fees, the civil rights statutes considered in that case authorized awards to both prevailing plaintiffs and prevailing defendants in certain circumstances, and the term "prevailing party" applied to both. *See Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 50 (2d Cir. 2012) (stating that the Fair Housing Act allows a fee award to a prevailing defendant where an action is "frivolous, unreasonable, or groundless, or [where] the plaintiff continued to litigate after it clearly became so"); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1176 (11th Cir. 2005) (applying the same standard to the Americans with Disabilities Act); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). In other contexts, courts have held that prevailing defendants may obtain attorney fees on the same terms as prevailing plaintiffs. *See Fogerty v. Fantasy, Inc.*,

510 U.S. 517, 534 (1994); *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006) (Sotomayor, J.). A defendant need not prevail *on the merits* to be a prevailing party, *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016), but we see no basis in the text of CAFRA or other authority to say that a CAFRA claimant, even if analogous to a civil defendant, may recover fees without any judicially sanctioned change in the relationship between parties.

Hinders complains that the district court's interpretation of CAFRA would lead to absurd results and compound the burden that civil forfeiture imposes on innocent claimants. She posits that claimants who are able to show early in litigation that the government's case is weak would be less likely to obtain fees than claimants who litigate further and secure a dismissal with prejudice. The district courts, however, retain discretion to guard against abuse and to dismiss *with* prejudice in appropriate cases. If a court is convinced that dismissal *without* prejudice at the government's request would cause legal prejudice to a claimant by unfairly depriving her of the ability to seek attorney fees under CAFRA, then the court may deny the government's motion. *See United States v. $107,702.66 in U.S. Currency*, No. 7:14-CV-00295-F, 2016 WL 413093, at *3-4 (E.D.N.C. Feb. 2, 2016); *see also United States v. Ito*, 472 F. App'x 841, 842 (9th Cir. 2012) (per curiam). Hinders's proposed interpretation of CAFRA, on the other hand, is no panacea. If the government is unable to dismiss a legally meritorious case without prejudice based on the exercise of prosecutorial discretion, then the exposure to liability for attorney fees may deter the government from forbearing litigation that would result in forfeiture of a claimant's property. After all, the new IRS policy issued shortly before the dismissal here contemplated that the government would refrain from pursuing forfeitures even where claimants violated federal law by structuring deposits derived from lawful sources.

For these reasons, we conclude that Hinders has not "substantially prevailed" in this action. The district court's dismissal without prejudice did not materially alter

the legal relationship of the parties, and Hinders is thus not eligible for an award of attorney fees, costs, or interest under CAFRA.

B.

Hinders next argues that the district court abused its discretion in dismissing the case without prejudice rather than with prejudice. Federal Rule of Civil Procedure 41(a)(2) states that a court may dismiss a case "at the plaintiff's request . . . on terms that the court considers proper." Unless otherwise specified, a dismissal under Rule 41(a)(2) is without prejudice. When determining whether to allow a voluntary dismissal without prejudice, a district court should consider "whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants." *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013) (quoting *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011)). We review a district court's decision for abuse of discretion. *Mullen v. Heinkel Filtering Sys., Inc.*, 770 F.3d 724, 727 (8th Cir. 2014).

The district court considered each of the relevant factors in deciding to grant the government's motion. The court found that the government had offered a valid reason for seeking dismissal—the exercise of its prosecutorial discretion and a desire to allocate resources elsewhere. The district court further found that there was no indication that the government sought dismissal "in order to gain some kind of strategic advantage" or as an exercise of "procedural gamesmanship." The court observed that there had been no hearings, that only two depositions had been taken, and that trial remained months away, so the dismissal would not result in a waste of resources. The court also found that Hinders had not shown that she would be prejudiced by a dismissal without prejudice.

We see no abuse of discretion in this determination. While the government declined to pursue the case further as a matter of prosecutorial discretion, the IRS and the Department of Justice are free to change their discretionary policies and to pursue another civil forfeiture action in the future. The statutory requirement of 18 U.S.C. § 984(b) that the government must trace property directly to an underlying offense after one year would present an evidentiary challenge, but it does not establish a legal barrier to a renewed action.

Hinders also advances the contention to which we alluded earlier: that the government's only reason for seeking dismissal without prejudice was to avoid an inevitable fee award under CAFRA, and that the district court's ruling caused her legal prejudice. The district court, however, determined on the motion to reconsider that Hinders waived this argument by failing to raise it in response to the motion to dismiss. There was no error in that conclusion. In arguing prejudice in response to the motion to dismiss, Hinders identified only the fading memories of witnesses, her current representation by *pro bono* counsel, the prospect of forum shopping, and the fear of future investigation. Her only mention of attorney fees appeared in the background section of her motion without accompanying legal argument. The district court thus did not abuse its discretion by relying on a waiver by Hinders to deny the motion to reconsider.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

ERICKSON, District Judge, concurring.

I concur specially not because I have any great reluctance to join the majority opinion. There is nothing in the Court's opinion that is inconsistent with the facts of the case, the positive law or this court's precedent. Instead I concur to comment on

-12-

the exercise of discretion by the Department of Justice in this matter. It is beyond question that the Attorney General and the United States Attorneys "retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). They have no less discretion in deciding when to enforce the nation's civil forfeiture laws.

In exercising this discretion prosecutors should act in a manner that comports with justice. This includes an obligation to quickly and diligently investigate the facts underlying the case. The tortuous history of this case reflects an unwise exercise of discretion early on in the proceedings. It should have been apparent to the government and its agents that if Hinders had simply made daily cash deposits, no forfeiture question would have been raised. While Hinders made comments about the structuring of her deposits to stay under "the $10,000 rule," it should have been equally apparent to the government that the violation was at most a technical violation–and one that arose out of Hinders's lack of understanding the problems created by failing to make daily deposits. The failure of the government to exercise its discretion early in the proceedings in a manner that minimized expense and litigation was, in my opinion, improvident to such a degree that failure to note it is unconscionable. In the future the government would be wise to exercise greater common sense in exercising its discretion.

_____