[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10312

_____

D.C. Docket No. 1:15-cv-23616-DPG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

$70,670.00 IN U.S. CURRENCY, et al.,

Defendants,

KURVAS SECRET BY W,
WILSON COLORADO,
MILADIS SALGADO,

Interested Parties-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 8, 2019)

Before WILLIAM PRYOR, NEWSOM, and BRANCH, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether the district court abused its discretion when it permitted the government to dismiss its complaint for forfeiture without prejudice and whether the dismissal entitled the claimants to attorney's fees under the Civil Asset Forfeiture Reform Act, *see* 28 U.S.C. § 2465(b)(1). The government filed a complaint for forfeiture against certain funds as the proceeds of criminal activity. Wilson Colorado and his business Kurvas Secret by W claimed most of the funds, and Miladis Salgado claimed the remainder. During the litigation, AnnChery Fajas USA, the victim of the alleged criminal activity, obtained a state judgment against Colorado and Kurvas Secret. To satisfy the judgment, the state court transferred the judgment debtors' interests in the funds to AnnChery. The government then moved to dismiss its complaint voluntarily without prejudice on the ground that the state-court judgment made the outcome of the forfeiture action irrelevant. The district court granted the motion, denied the claimants' motion to dismiss the action *with* prejudice, and denied the claimants' motion for an award of attorney's fees. Because the district court did not abuse its discretion in dismissing the action without prejudice and the claimants did not "substantially prevail[]," *id.*, we affirm.

## I.  BACKGROUND

AnnChery Fajas USA, Inc., a company based in Colombia and Florida, manufactures and sells fajas, a genre of garments that includes corsets, girdles, and

2

waist cinchers. In response to growing demand—apparently a result of unofficial endorsements by celebrities such as Kim Kardashian—AnnChery instituted a policy limiting the number of fajas a retailer could purchase to 1,500 per week.

In late 2014, Wilson Colorado moved from Spain to Miami, where he resided with his ex-wife, Miladis Salgado. At the suggestion of Tatiana Narvaez-Caicedo, the general manager of AnnChery in Florida, Colorado decided to enter the faja retail business. He established Kurvas Secret by W, Inc., a Florida corporation, for that purpose.

In April 2015, AnnChery determined that Narvaez-Caicedo was helping Colorado and Kurvas Secret circumvent its quota system and receive AnnChery merchandise without paying for it. AnnChery fired Narvaez-Caicedo; sent Colorado a demand letter alleging that he had stolen its merchandise; and filed a complaint in Florida court against Narvaez-Caicedo, Colorado, Kurvas Secret, and two other defendants alleging that they had conspired to steal from and defraud the company.

After receiving the demand letter, Colorado liquidated his Wells Fargo and Chase bank accounts and secured the funds at his home. These withdrawals consisted of a Wells Fargo cashier's check for $101,629.59 and a Chase cashier's check for $30,000, both made payable to Colorado. Colorado purchased these checks using proceeds from the sale of AnnChery fajas.

3

Meanwhile, the Drug Enforcement Administration received a tip asserting that Colorado was a cocaine distributor and money launderer and that he used several south Florida residences to store currency and narcotics. The tipster said that Narvaez-Caicedo lived in one of the "stash houses" and provided her address and an accurate description of her car, including the license-plate number. Law-enforcement officers searched Narvaez-Caicedo's home and found no currency or contraband. But she provided them with the address of the residence where Colorado was living with Salgado.

The officers searched Salgado's home. There, they discovered and seized potential drug paraphernalia and—more importantly for this appeal—both cashier's checks and $15,070 in cash in Salgado's master bedroom closet. They found and seized $55,600 more in cash beneath a nightstand in Colorado and Salgado's daughter's bedroom.

The government filed a complaint *in rem* against the $70,670 seized in cash, the value of the Wells Fargo cashier's check, and the value of the Chase cashier's check, stating three claims for forfeiture. First, the complaint alleged that the funds were the proceeds of drug crimes, *see* 21 U.S.C. §§ 841(a), 846, 881(a)(6). Second, it alleged that the funds were derivative proceeds either of drug trafficking or of the interstate transportation of stolen property, *see* 18 U.S.C. §§ 981(a)(1)(C), 2314; 21 U.S.C. §§ 841(a)(1), 846. Third, it alleged that the funds were property

4

involved in or traceable to knowing monetary transactions or attempted transactions involving the proceeds of criminal activity, *see* 18 U.S.C. §§ 981(a)(1)(A), 1956(a)(1), 1957.

Colorado, Salgado, and Kurvas Secret filed claims to the funds. Colorado and Kurvas Secret claimed ownership of the cashier's checks and the $55,600 seized from the nightstand, as well as a possessory interest in the $15,070 seized from Salgado's bedroom closet. Salgado claimed ownership of the cash seized from her closet and a possessory interest in the rest of the funds.

While this action was being litigated in the district court, the state court entered a default judgment in favor of AnnChery's second amended complaint based on what the state court found was Colorado and Kurvas Secret's "willful and deliberate failure to comply with [its] Orders on discovery." And the state court entered a permanent injunction against Colorado and Kurvas Secret that required them to "preserve and segregate any funds in their financial and bank accounts or elsewhere that constitute[d] proceeds from the sale of AnnChery products and merchandise."

Under Florida law, the default judgment against Colorado and Kurvas Secret conclusively established "all factual allegations in [AnnChery's] Second Amended Complaint." *See N. Am. Accident Ins. Co. v. Moreland*, 53 So. 635, 637 (Fla. 1910) ("A judgment by default . . . operates as an admission by the defendants of the

5

truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from [them]."); *Ellish v. Richard*, 622 So. 2d 1154, 1155 (Fla. Dist. Ct. App. 1993) ("[A] party against whom a default judgment is entered admits all well-pleaded facts as true."). AnnChery had alleged that any and all funds in Colorado's bank accounts or to which he had access were derived from the sale of stolen fajas. So, after entry of the state judgment and injunction, Colorado and Kurvas Secret could no longer dispute in that proceeding that any of the defendant properties they owned were subject to the preservation-and-segregation order in the permanent injunction.

The government moved for summary judgment in favor of two of its forfeiture claims and, in the alternative, for leave to dismiss the complaint without prejudice, *see* Fed. R. Civ. P. 41(a)(2), because the state judgment and permanent injunction "effectively render[ed] the outcome of th[e] [civil forfeiture] case moot." The government explained that, regardless of the outcome of its *in rem* action, the funds would be transferred to AnnChery:

> In the unlikely event that Claimants prevail on any of their claims, the Defendants *In Rem* would be subject to the Miami-Dade Circuit Court's permanent injunction, resulting in such funds being awarded to AnnChery, and not Claimants. If the United States were to prevail, the United States would return, in accordance with the Department of Justice victims' policy, any forfeited funds required to make AnnChery, the victim, whole. Consequently, in an effort to avoid unnecessary litigation, the United States seeks, in the alternative, leave to permit the United States to voluntarily dismiss this matter so that ownership of the Defendants *In Rem* can be resolved by the Miami-Dade Circuit Court.

6

In their joint response to the government's motion for summary judgment or voluntary dismissal, the claimants protested that a voluntary dismissal without prejudice would be "contrary to law and a manifest injustice," but they failed to explain how they would be prejudiced by such a dismissal. The state court later entered judgment in favor of AnnChery against Colorado and Kurvas Secret in the amount of $318,019.70 plus costs, and the government filed the state judgment in the district court as a supplement to its motion for summary judgment or voluntary dismissal.

The district court granted the government's motion in part, "find[ing] good cause to permit the United States to voluntarily dismiss this action without prejudice based on the parallel state action" and "order[ing] that th[e] action [be] closed administratively." The government filed a proposed final order of dismissal and, with it, an order in which the state court had assigned and transferred to AnnChery, in satisfaction of its judgment, "[a]ny and all rights, title, claims, or interests of any kind of [Colorado and Kurvas Secret] in the seized cash and cashier's checks at issue in the Forfeiture Action."

The claimants filed a notice of objection to the order dismissing the action without prejudice and moved that the district court "dismiss th[e] forfeiture action *with prejudice* so that [the claimants' attorney could] pursue attorney[']s fees pursuant to the Civil Asset Forfeiture Reform Act and 28 USC § 2465." The

7

claimants argued that they would "suffer legal prejudice in the form of a denial of attorney fees . . . if this action [were] dismissed without prejudice, rather than *with prejudice*." *See McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir. 1986) (explaining that a district court should deny a motion for voluntary dismissal without prejudice when to grant it would cause "plain legal prejudice" to the defendant). And they suggested that they were eligible for an award of attorney's fees even if the dismissal remained without prejudice.

The next day, the district court entered an order of dismissal. The order stated that "the Miami-Dade Circuit Court has entered decisions in a parallel state action . . . which effectively render the outcome of this action moot." It also provided, "Should the United States re-file this action, the Court will award costs to the Claimants pursuant to Rule 41(d) of the Federal Rules of Civil Procedure." *See* Fed. R. Civ. P. 41(d)–(d)(1) ("If a plaintiff who previously dismissed an action . . . files an action based on or including the same claim against the same defendant, the court . . . may order the plaintiff to pay all or part of the costs of that previous action . . . .").

The claimants moved to alter or amend the order to dismiss the action with prejudice. They argued that the duration of the action, the amount of resources expended, alleged dilatory tactics by the government, and the pendency of dispositive motions all counseled in favor of a dismissal with prejudice. They

8

construed the government's assertion that the action was "effectively" moot as an admission of jurisdictional mootness, and they argued that this admission too supported a dismissal with prejudice. And they repeated their argument that they were entitled to attorney's fees in any event but insisted that, if the label on the dismissal mattered, the district court should consider their loss of a right to attorney's fees sufficient legal prejudice to require a dismissal with prejudice. Concurrently, the claimants moved for attorney's fees, costs, and interest under the Civil Asset Forfeiture Reform Act, *see* 28 U.S.C. § 2465(b)(1).

Before the district court ruled on the claimants' motions, Salgado, AnnChery, and the claimants' attorney executed and filed a "Stipulation for Settlement in Forfeiture Action," in which the signatories "stipulate[d] to the entry of an Order in the Forfeiture Action" distributing $10,387.92 of the defendant funds to Salgado, $128,920.61 to AnnChery, and $62.991.06 to the claimants' attorney to hold in escrow pending the resolution of the motion for attorney's fees. The district court ordered the release of the funds and directed the parties to distribute them in accordance with the stipulation.

The district court denied the claimants' motion to alter or amend the order of dismissal and their motion for attorney's fees. The district court reasoned that the length of the litigation and that it had progressed to the summary-judgment stage did not require that the voluntary dismissal be with prejudice because "[n]othing

9

suggest[ed] . . . that the government acted in bad faith or that the government did not believe it had a meritorious case for forfeiture." And it stated that it had made the government responsible for the claimants' costs if the government refiled the action.

The district court also rejected the claimants' argument that the dismissal prejudiced them because it barred their statutory right to attorney's fees. The district court deemed the argument forfeited because the claimants had not raised it in their response to the government's motion for voluntary dismissal. The district court also stated that it was an open question "whether loss of an argument for attorney's fees . . . constitutes legal prejudice that should preclude voluntary dismissal without prejudice," but it concluded "that the facts of this case [did not] warrant that determination" because the government had not acted in "bad faith" but, instead, had chosen to forgo "trial on what it believed to be a meritorious forfeiture complaint in light of the alleged victim's state court judgment." And the district court denied the motion for attorney's fees on the ground that a dismissal without prejudice does not alter the legal relationship of the parties, so the claimants had not "substantially prevail[ed]," 28 U.S.C. § 2465(b)(1).

## II. STANDARD OF REVIEW

"Dismissal on motion of the plaintiff pursuant to Rule 41(a)(2) is within the sound discretion of the district court, and its order may be reviewed only for an

abuse of discretion." *McCants*, 781 F.2d at 857. We also "review the denial of a motion for attorneys' fees and costs for abuse of discretion." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012). Under the abuse-of-discretion standard, "[a] district court's underlying legal conclusions are reviewed *de novo* and its factual findings for clear error." *Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009). A district court abuses its discretion when it applies an incorrect legal standard, relies on clearly erroneous factual findings, or commits a clear error of judgment. *See id.*; *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004).

### III. DISCUSSION

We divide our discussion in two parts. First, we explain that the district court did not abuse its discretion when it granted the government's motion to dismiss the action without prejudice. Second, we explain that the district court did not abuse its discretion when it denied the claimants' motion for attorney's fees.

### A.  *The District Court Did Not Abuse Its Discretion when It Allowed the Government to Dismiss Its Complaint Without Prejudice.*

The claimants argue that the district court abused its discretion when it permitted the government to dismiss its complaint voluntarily without prejudice instead of with prejudice. After an opposing party has served an answer or a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ.

11

P. 41(a)(2). In considering such a request, "the district court must exercise its broad equitable discretion under Rule 41(a)(2) to weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *McCants*, 781 F.2d at 857.

We have explained that "in most cases a dismissal should be granted unless the defendant will suffer clear legal prejudice, other than the mere prospect of a subsequent lawsuit, as a result." *Id.* at 856–57 (emphasis omitted). "The crucial question to be determined is, Would the defendant lose any substantial right by the dismissal." *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (quoting *Durham v. Fla. E. Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967)). We have made clear that "the sanction of dismissal [with prejudice] is the most severe sanction that a court may apply, and its use must be tempered by a careful exercise of judicial discretion." *Durham*, 385 F.2d at 368 (alteration adopted) (emphasis omitted) (quoting *Durgin v. Graham*, 372 F.2d 130, 131 (5th Cir. 1967)). In *Durham*, we explained that "[t]he decided cases . . . have generally permitted it only in the face of a clear record of delay or contumacious conduct by the plaintiff." *Id.*

The district court did not abuse its broad discretion when it granted the government's motion for a voluntary dismissal without prejudice. Although the claimants opposed the motion in the district court as "contrary to law and a

12

manifest injustice," they identified no "substantial right" that they "would . . . lose . . . by the dismissal," *id.* At most, their protest that the district court should not "allow the government to abuse the federal forfeiture laws . . . and walk away as if nothing had happened" might liberally be construed as an argument that the litigation had continued too long for the government to be allowed to back out of it. But it is well settled that "delay alone, in the absence of bad faith, is insufficient to justify a dismissal with prejudice, even where a fully briefed summary judgment motion is pending," *Pontenberg*, 252 F.3d at 1259, and indeed even on the eve of trial, *see Durham*, 385 F.2d at 368–69. The district court found that nothing in the government's conduct evinced bad faith, and nothing in the record proves that the district court clearly erred in so finding.

Although the claimants argue that the government litigated in bad faith, their contention makes little sense. They argue that the government unreasonably delayed the litigation by failing to interplead the funds in the state action. But the two actions were of entirely different kinds: AnnChery sued Colorado and Kurvas Secret *in personam* for alleged civil torts under Florida law, and the government sued the funds *in rem* as subject to forfeiture for alleged violations of federal law. The success of AnnChery's suit *in personam* would—and ultimately did—result in Colorado and Kurvas Secret being personally liable to AnnChery with respect to the obligations and in the amounts imposed by the state judgment. By contrast, the

13

success of the federal suit *in rem* would have "determine[d] the Government's title to the property as against the whole world." *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1295 (11th Cir. 1991). AnnChery's *in personam* suit asserted no property interest in any of the funds because AnnChery had none to assert. Its property interest in the funds came into being only *after* it had secured a judgment of liability *in personam* against Colorado and Kurvas Secret and only after the state court had transferred their *in rem* interests in the funds to AnnChery in satisfaction of that personal judgment. Even then, the respective claims to the funds remained unsettled, and the government could have persevered in this forfeiture action to establish its "title . . . as against the whole world," *id*.

The government made clear that even if it prevailed in this forfeiture action, it intended to transfer the funds to AnnChery, so the district court reasonably concluded that the state judgment made the action "effectively . . . moot." The claimants argue that this conclusion was a legal error because the action was not "moot" in the jurisdictional sense of the word. But it is obvious from the record that the government never argued, and the district court never ruled, that the state judgment eliminated the *in rem* case or controversy. Instead, the district court reached the commonsense conclusion that it no longer mattered whether the

14

government or the claimants had superior title to the funds because, either way, the money would end up with AnnChery.

The claimants contend that the dismissal without prejudice deprived them of their right to collect attorney's fees upon "substantially prevail[ing]," 28 U.S.C. § 2465(b)(1), but the district court acted within its discretion to reject this argument as untimely. The claimants made no reference to attorney's fees in their opposition to the government's motion. They raised the issue for the first time only after the district court had entered an order granting the motion for voluntary dismissal without prejudice and administratively closing the case. District courts have the discretion not to consider belated arguments, *see, e.g.*, *Young v. City of Palm Bay*, 358 F.3d 859, 863–64 (11th Cir. 2004), and the district court did not abuse its discretion to do so in this case.

Even if we overlook the untimeliness of the claimants' argument, it does not entitle them to a dismissal with prejudice. The parties dispute whether the right to statutory attorney's fees is a "substantial right" the deprivation of which by a plaintiff's voluntary dismissal without prejudice constitutes "legal prejudice." We agree with the district court that "the facts of this case" do not require a definitive answer to this question. Even if we assume that a meritorious claimant's loss of a right to statutory attorney's fees constitutes legal prejudice, it cannot constitute *clear* legal prejudice unless it is in turn clear that the claimants would indeed

15

"substantially prevail[]," 28 U.S.C. § 2465(b)(1), were the action litigated to judgment. *See United States v. $32,820.56*, 106 F. Supp. 3d 990, 997 (N.D. Iowa 2015) ("Finding plain legal prejudice on th[is] basis would necessarily presume that the party resisting voluntary dismissal would have prevailed on the merits if the case continued to a conclusion."), *aff'd*, 838 F.3d 930 (8th Cir. 2016). And in this appeal, it is not clearly apparent from the record—nor have the claimants bothered to argue on appeal—that they ultimately would have prevailed, so the district court did not abuse its discretion in dismissing the complaint without prejudice.

The claimants also contend that, because the government had no intention of refiling the complaint, "there is no reason why the action should not have been dismissed *with prejudice*," but this argument misses the mark. Dismissal without prejudice is the general rule, not the other way around. *See* Fed. R. Civ. P. 41(a)(2) ("Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."). And we have explained that a district court should depart from the general rule only when failing to do so would work "clear legal prejudice" to the opposing party. *McCants*, 781 F.2d at 856–57.

The claimants' one remaining argument is that the state judgment and levy provided no basis for the dismissal of the federal action with respect to Salgado's claim of ownership in the $15,070 found in her closet because Salgado was not a

16

party to the state action and the state judgment affected none of her rights to the funds. But the claimants did not raise this argument in their one timely response to the government's motion for voluntary dismissal. Their untimely motion for dismissal with prejudice, filed after the government's motion had been granted, "raised" it only in an oblique fashion. And the claimants did not raise this argument at all in their motion to alter or amend the order of dismissal. The district court did not abuse its discretion by ignoring an argument that was not squarely presented to it.

In any event, Salgado has not established that she suffered clear legal prejudice by the government's voluntary dismissal. She belabors the argument that the state judgment did not "moot" her claims in the jurisdictional sense of the word, but we have explained that this argument is beside the point. And she has established no more than the other claimants that she would have prevailed if the action had been fully litigated, so she was not clearly prejudiced by the loss of her potential claim for attorney's fees. The district court did not abuse its discretion when it granted the government's motion to dismiss this action without prejudice.

### B. The Claimants Are Not Entitled to Attorney's Fees.

The claimants argue that they are entitled to attorney's fees on three grounds. First, assuming that the district court should have dismissed the action with prejudice, they contend that they would be entitled to statutory attorney's fees

because they would have "substantially prevail[ed]," 28 U.S.C. § 2465(b)(1).

Second, they contend that they have substantially prevailed even under the existing

order of dismissal without prejudice because the government did not prevail on any

of its claims for forfeiture. Third, the claimants argue that the district court should

have made the government responsible for their attorney's fees and costs as a

condition of voluntary dismissal under Rule 41(a)(2).

The claimants' first argument fails because, as we have explained, the

district court did not abuse its discretion by permitting the government to dismiss

its complaint without prejudice, and their second and third arguments fare no

better. We consider the latter arguments in turn.

The claimants have not substantially prevailed because a dismissal without

prejudice places no "judicial *imprimatur*" on "the legal relationship of the parties,"

which is "the touchstone of the prevailing party inquiry." *CRST Van Expedited,*

*Inc. v. Equal Emp't Opportunity Comm'n*, 136 S. Ct. 1642, 1646 (2016) (citations

and internal quotation marks omitted); *see also Loggerhead Turtle v. Cty. Council*

*of Volusia Cty.*, 307 F.3d 1318, 1322 n.4 (11th Cir. 2002) (explaining that we

interpret "substantially prevailed" fee-shifting statutes consistently with

"prevailing party" fee-shifting statutes). A voluntary dismissal without prejudice

"renders the proceedings a nullity and leaves the parties as if the action had never

been brought." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.

18

1999) (alterations adopted) (quoting *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996)). As the government points out, the order of dismissal poses "no legal bar precluding the government from refiling the same forfeiture action in the future." True, the government admits that, "as a practical matter, it might be difficult for the government to pursue a subsequent civil forfeiture action against the defendant properties . . . because they may be difficult to bring back within the district court's *in rem* jurisdiction." But this practical difficulty is irrelevant. What matters is that the claimants have not obtained a "final judgment reject[ing] the [government's] claim" to the defendant funds. *CRST Van Expedited*, 136 S. Ct. at 1651; *cf. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (holding that "[a] defendant's voluntary change in conduct"—the mirror image of a plaintiff's voluntary decision to withdraw a claim—"lacks the necessary judicial *imprimatur*" to qualify the defendant as a prevailing party).

The claimants suggest that Salgado obtained a judicially sanctioned recognition of her right to the funds because the district court instructed "[t]he parties [to] distribute the funds pursuant to their Stipulation," but this argument is unpersuasive. The settlement stipulation embodied an agreement between AnnChery, Salgado, and the claimants' attorney concerning their rights to the funds *as to one another*, but it said nothing about *the United States'* right to the

19

funds, which was the whole subject of this civil forfeiture action. *See Prop. Belonging to Hayes*, 943 F.2d at 1295. With or without the settlement stipulation, Salgado has not substantially prevailed because the government's claim of superior title to her share of the funds remains unadjudicated.

Finally, we agree with the government that the district court lacked the authority to make the government responsible for the claimants' attorney's fees as a condition of dismissal under Rule 41(a)(2). Any provision of law that "renders the United States liable for attorney's fees for which it would not otherwise be liable . . . amounts to a partial waiver of sovereign immunity." *Ardestani v. Immigration & Naturalization Serv.*, 502 U.S. 129, 137 (1991). And "any waiver of the National Government's sovereign immunity must be unequivocal." *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *accord United States v. Mitchell*, 445 U.S. 535, 538 (1980). The general language of Rule 41(a)(2)—which provides only that the district court may impose "terms that [it] considers proper" on the grant of a motion for voluntary dismissal by leave of the court—is not an "unequivocal" waiver of the sovereign immunity of the United States. The claimants cite some nonprecedential decisions suggesting that Rule 41(a)(2) permits an award of fees against the government, but those decisions overlook the sovereign-immunity problem entirely. *See, e.g.*, *United States v. 2007 BMW 335i Convertible*, 648 F. Supp. 2d 944, 955 (N.D. Ohio 2009) (assuming that a

20

discretionary award of attorney's fees is possible under Rule 41(a)(2), but declining to grant it). And in any event, even if the district court had the authority to award fees, it was no abuse of its discretion not to do so. *See* 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2366 (3d ed. May 2019 update) ("The district judge is not obliged to order payment of the fee.").

## IV. CONCLUSION

We **AFFIRM** the orders dismissing this action without prejudice and denying the claimants' motion for attorney's fees.

21