**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1678**

CITI TRENDS, INC.; KELLY MARTIN,

Plaintiffs - Appellants,

v.

COACH, INC.; COACH SERVICES, INC.,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge.  (1:17-cv-01763-RDB)

Argued:  September 18, 2019                 Decided:  October 18, 2019
                        Amended:  October 18, 2019

Before MOTZ, HARRIS, and QUATTLEBAUM, Circuit Judges.

Reversed by unpublished per curiam opinion.

**ARGUED:**  Jamaica Potts Szeliga, SEYFARTH SHAW, LLP, Washington, D.C., for Appellants.  David B. Jinkins, THOMPSON COBURN LLP, St. Louis, Missouri, for Appellees. **ON BRIEF:**  Samuel R. Watkins, THOMPSON COBURN LLP, Los Angeles, California, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Citi Trends, Inc. appeals the district court's award of attorney fees to Coach, Inc. and Coach Services, Inc. (collectively, "Coach") pursuant to the Lanham Act, which provides for an award of "reasonable" attorney fees to the "prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). Citi Trends argues that, contrary to the holding of the district court, Coach was not the "prevailing party," that this case was not "exceptional," and that the fee amount was not "reasonable." For the reasons that follow, we reverse.

I.

Citi Trends is a national retailer of value-priced apparel and accessories. Between 2014 and 2015, Kelly Martin, a buyer for Citi Trends, purchased handbags and wallets ("goods") from South Pacific & China Supply, Inc., a third-party vendor and importer of goods.

In 2015, in the Port of Long Beach, California, U.S. Customs and Border Protection ("CBP") seized 1,400 goods alleged to bear Coach's marks ("seized goods") destined for South Pacific. CBP believed the "seized goods" were counterfeit Coach products and notified Coach of the seizures. Coach then sued South Pacific in federal court in California. Through discovery in that suit, Coach learned that Martin had ordered the seized goods on behalf of Citi Trends.

In April 2017, Coach sent Citi Trends a demand letter and draft complaint concerning all goods purchased from South Pacific. Referencing the draft complaint, the

2

letter stated, in part: "These claims apply not only to the counterfeit handbags and wallets that were seized by CBP ["seized goods"], but also to additional counterfeit handbags and wallets that escaped detection and seizure by CBP, and thus were sold into the United States ["sold goods"] by Citi Trends." (emphasis and clarifying insertions added). Coach's draft complaint relied in part on California law and indicated the suit would be filed in the U.S. District Court for the Central District of California.

For several weeks, the parties engaged in discussions about all the goods ordered from South Pacific. Citi Trends complied with Coach's requests for documents and informed Coach that it may have sold up to nearly 20,700 goods ("sold goods"). Following these initial discussions, Coach demanded payment for all counterfeit goods, explaining that if it did not receive a response by June 30, it would file the draft complaint attached to its April letter.

Approximately three weeks prior to this deadline, a California lawyer representing Citi Trends requested that Coach direct all communications to his office. In an emailed response, Coach demanded payment of $975,000 and reiterated its June 30 deadline. Coach heard nothing further from the California lawyer.

Instead, on June 26, a Maryland lawyer telephoned Coach on Citi Trends' behalf and explained that she was conducting an independent review of the matter for Citi Trends. Coach's counsel informed the Maryland lawyer that he was busy and suggested a call two days later, on June 28. Following the June 26 call, Coach emailed the Maryland attorney to reiterate Coach's monetary demand and June 30 deadline. Citi Trends contends and

3

Coach does not deny, that in the same email, Coach "abruptly and unilaterally cancelled" the call scheduled for June 28.

Interpreting Coach's email as the end of negotiations, on June 27 Citi Trends filed this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, in the U.S. District Court for the District of Maryland, where both Coach, Inc. and Coach Services, Inc. are incorporated. The parties dispute the scope of Citi Trends' complaint but agree that it sought a judgment that some of the goods ordered from South Pacific did not infringe on Coach's trademarks and so Citi Trends was not liable under the Lanham Act, 15 U.S.C. §§ 1114, 1124, 1125(a); the Tariff Act, 19 U.S.C. § 1526(a); or state law.

On June 28, Citi Trends sent Coach a copy of the Maryland complaint and a counteroffer of $45,000, representing the approximate amount Citi Trends purportedly profited on the "sold goods." Later the same day, Coach filed the California complaint it had earlier shared with Citi Trends.

Coach answered the Maryland complaint and the parties proceeded to discovery. Five months later, in November 2017, Coach moved to dismiss the Maryland case on two grounds: (1) there was no case or controversy and so no subject matter jurisdiction because only the "sold goods" were at issue, and Coach had no claim related to the "sold goods"; or (2) even if the court had jurisdiction, it should exercise its discretion to decline to hear the case, as permitted under the Declaratory Judgment Act. The district court did not rule on whether there was an actual case or controversy but instead exercised its discretion to decline to take jurisdiction of the case.

4

The court applied the four-factor test for deciding whether to exercise jurisdiction under the Declaratory Judgment Act. It held a declaratory judgment would not: (1) serve a useful purpose in clarifying the legal relations in issue, or (2) terminate and afford relief from uncertainty and controversy arising from the proceedings, or (3) serve the interests of federalism, and (4) that Citi Trends had filed in Maryland as a device for "procedural fencing." As to the fourth factor, the court reasoned that Citi Trends had filed an anticipatory suit, given Citi Trends knew that Coach intended to file suit by June 30, 2017. In particular, the court cited Coach's contention that Citi Trends' counsel said she would not let her clients be "sitting ducks" in California and Citi Trends' decision to file three days before Coach's deadline.[1] The district court concluded that "[t]he history of the parties' dispute shows that Plaintiffs waited until Defendants' suit was 'so certain or imminent,' that filing suit in [Maryland] was 'an improper act of forum shopping.'" (internal citation omitted).

Subsequently, Coach filed a motion for attorney fees. The district court concluded that Coach was a "prevailing party" and that this was an "exceptional case," and so granted

---

[1] Coach's counsel filed a declaration that stated that Citi Trends' counsel suggested that she initiated the Maryland case because "she had no intention of allowing her clients, *i.e.*, Citi Trends and Kelly Martin, to be 'sitting ducks' in the California Case, which she knew was to be filed June 30, 2017." Coach's declaration avers that this call took place on June 25, 2017, but is contradicted by the declarant's further averment that Maryland counsel first initiated contact with Coach on June 26, 2017. Coach's counsel also avers that this conversation took place pursuant to a "meet and confer" regarding a Citi Trends' motion in the California case. But neither the Maryland case nor the California case was filed before June 25, 2017. The district court, relying on the declaration from Coach, misstates the context in which counsels' conversation took place.

5

Coach's motion and awarded fees in the amount of $154,565. Citi Trends timely appeals the award and amount of attorney fees.

## II.

The Lanham Act allows a district court to award reasonable attorney fees to a "prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). We review the grant of attorney fees under the Lanham Act for abuse of discretion. *See Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484 (4th Cir. 2018).

Under the American Rule, parties pay their own litigation costs regardless of the outcome of a case. *See Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). Congress may displace this default rule and has done so in numerous statutes; although these modifications "to the American Rule take various forms, they tend to authorize the award of a reasonable attorney's fee . . . and usually refer to a 'prevailing party.'" *Id.* (internal citation and brackets omitted). The Supreme Court has reiterated that "prevailing party" should be interpreted consistently across diverse statutory contexts. *See CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016).

A party can prevail by obtaining a dispositive final judgment on the merits, but, as the Court recently clarified, a favorable judgment on the merits is not necessary for a defendant to prevail. *Id.* Following *CRST*, our sister circuits have held that a dismissal on jurisdictional grounds that *permanently* bars a plaintiff from reasserting a claim in any forum is sufficient to confer prevailing party status on the defendant, but a judgment that has no preclusive effect on the plaintiff's ability to re-file does not confer prevailing party

6

status. *See, e.g.*, *Manhattan Review LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019); *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018); *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 327–28 (1st Cir. 2017); *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 709–10 (9th Cir. 2017); *United States v. $32,820.56*, 838 F.3d 930, 934 (8th Cir. 2016).

Not all jurisdictional defects have a permanently preclusive effect. Dismissals without prejudice for improper venue or lack of personal jurisdiction, for example, do not prevent a party from reasserting the same claims in another forum. Similarly, a motion to compel arbitration results in a change of forum, but the transfer into an arbitral forum has no impact on the underlying substance of the claims. Whether *CRST*'s holding extends to the defendants in these hypothetical cases is uncertain, as the Supreme Court explicitly declined to decide whether a nonmerits judgment without preclusive effect is sufficient for a party to prevail. *Id.* at 1653.

The few courts that have addressed whether a partially preclusive judgment suffices to achieve prevailing party status have disagreed. Some district courts have held that, if a plaintiff can correct the jurisdictional defect and re-file the case in *some* forum, a defendant is not a prevailing party. *See In re CTP Innovations, LLC*, MDL No. 14-MD-2581, 2017 WL 4005687, at *4 (D. Md. Sept. 12, 2017); *Fashion Television LLC v. APT Satellite Co. Ltd.*, No. 17-CV-5413-LTS-SN, 2018 WL 4300526, at *4 (S.D.N.Y. Sept. 10, 2018). Other district courts have held that prevailing on a motion to dismiss for lack of personal jurisdiction confers prevailing party status, even when the claims can be refiled elsewhere. *See Direct Fitness Sols., LLC v. Direct Fitness Sols., LLC*, 281 F. Supp. 3d 697, 701–02

(N.D. Ill. 2017); *Megna v. Biocomp Labs., Inc.*, 225 F. Supp. 3d 222, 224–25 (S.D.N.Y. 2016). The two circuit courts that have considered this issue have also divided on the question. *Compare B.E. Technology LLC v. Facebook, Inc.*, No. 18-2356, -- F.3d -- 2019 WL 5057470 (Fed. Cir. Oct. 9, 2019) (holding that a party that obtained dismissal of a case for mootness prevailed) *with Cortés-Ramos v. Sony Corp. of Am.*, 889 F.3d 24, 25–26 (1st Cir. 2018) (refusing to find defendant was a prevailing party when it succeeded in compelling arbitration). In sum, whether a defendant "prevails" when it succeeds in barring a plaintiff from filing its claims in a particular forum presents a question that has evenly divided the few courts that have considered it.

The district court held that Coach was a prevailing party because the effect of the district court's refusal to hear the Maryland case meant that Coach could litigate in its chosen forum. Before us, the parties dispute not only whether preclusion is required, but whether the district court's ruling is fully preclusive. For these reasons and because we conclude that even if Coach was a prevailing party, the district court abused its discretion in determining that this case is "exceptional," we decline to determine whether Coach was a prevailing party here.

III.

District courts have wide discretion in determining whether a case is "exceptional" under the Lanham Act, but this discretion is not unbounded. A court abuses its discretion if it bases its decision on "an erroneous view of the law or a clearly erroneous assessment of the evidence." *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563

8

n.2 (2014) (construing the Patent Act's "exceptional case" standard of appellate review) (quoting *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990)) (internal quotation marks omitted). A factual finding is clearly erroneous when, although the record contains some evidence to support it, the reviewing court, on the entirety of the record, is "left with the definite and firm conviction that a mistake has been committed." *See PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 125 (4th Cir. 2011) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)) (internal quotation marks omitted).

There is no "precise rule or formula for" determining whether a case is "exceptional." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (internal quotations omitted). Instead, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* at 554; *see also Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (adopting the *Octane Fitness* exceptional case standard in a Lanham Act case). Neither misconduct nor bad faith is required for a case to be "exceptional." *See Verisign,* 891 F.3d at 487.

We have adopted a three-part test to determine whether a case is "exceptional" within the meaning of § 1117(a):

> a district court may find a case exceptional and therefore award attorneys fees to the prevailing party under § 1117(a) when it determines, in light of the totality of the circumstances, that (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there

9

is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Georgia-Pacific Consumer Prods.*, 781 F.3d at 721 (citations omitted).

The district court offered two findings to support its determination that this case, under the totality of the circumstances, was an "exceptional" case warranting attorney fees: Citi Trends (1) engaged in forum shopping and (2) failed to file counterclaims in the California case. The court indicated that these reasons were cumulative, rather than independent.

With respect to the second basis for granting fees — Citi Trends' failure to file counterclaims in the California case — the court did not articulate why a failure to file counterclaims in separate litigation in another jurisdiction supported an award of fees to Coach. We infer that the court understood Citi Trends' failure to file counterclaims in the California case to the "sold goods" as an implicit admission that these claims were frivolous or objectively unreasonable. The court apparently believed that only the "seized goods" were at issue in the Maryland case and so Citi Trends' claim as to the "sold goods" was objectively unreasonable or frivolous. That puts the cart before the horse.

As Coach admitted at oral argument before us, at the time Citi Trends filed the Maryland case in June 2017, it was reasonable for Citi Trends to perceive the scope of Coach's claims as encompassing both the "sold goods" and the "seized goods." Oral Arg. at 19:05–20:05. After all, Coach's April 2017 demand letter asserted claims with respect to both the "seized goods" and the "sold goods." Moreover, Coach sought (and Citi Trends provided) detailed information about the "sold goods."

10

Coach now asserts that, following its initial contact with Citi Trends, it quickly concluded that it did not have sufficient information to support a good faith claim to the "sold goods." But there is no indication in the record that Coach communicated this determination to Citi Trends before it sought dismissal in November 2017, five months after suit had been filed. The record indicates that only at that time did Coach represent that it had no good faith basis for claims over the "sold goods." Coach reiterated this disavowal in seeking fees. Based on Coach's disavowal, as well as Coach's underlying California draft complaint, the district court apparently concluded that Coach had made no claims as to the "sold goods."

Thus, in March 2018, when Citi Trends answered the California complaint, Citi Trends had no reason to file counterclaims as to the "sold goods" — Coach had repeatedly asserted it had no claim against Citi Trends for the "sold goods." Citi Trends' failure to file counterclaims to the "sold goods" in the California case does not render unreasonable its initial assertions in its complaint, filed almost a year earlier in Maryland. Rather, the lack of counterclaims in the California case as to "sold goods" reflects a decision made *after* Coach's unequivocal representations that Coach had no claims to the "sold goods" in the Maryland case. The district court was clearly erroneous in weighing Citi Trends' failure to file counterclaims in the California case as to the "sold goods" when it considered whether to award fees.[2]

---

[2] Coach now argues that it did not assert in the Maryland case that it would *never* bring claims related to the sold goods, only that it had no good faith basis to bring claims at the time of the Maryland litigation. Response Br. at 13. Coach therefore claims that Citi Trends' failure to bring counterclaims to the sold goods in the California litigation was

11

Given that the district court did not regard its two findings for awarding fees as independent, it may be the elimination of one of those findings requires us to vacate the award of fees. But we need not so hold because the remaining finding as to Citi Trends' forum shopping does not by itself provide an adequate rationale for fees. In seeking fees, Coach certainly made the argument that Citi Trends had acted in an "unreasonable" manner and its conduct constituted an "abuse of process." But the district court never so found. Rather, the court simply reiterated that Citi Trends' "attempt to preempt Coach's suit and be the 'first to file'" constituted the improper forum shopping and procedural fencing that had warranted the court's decision to "declin[e] jurisdiction under the Declaratory Judgment Act." The court's reliance on its basis for refusing to exercise jurisdiction does not constitute the finding of "litigat[ing] the case in an unreasonable manner" needed to justify an award of attorney fees. *Georgia-Pacific*, 781 F.3d at 721 (internal quotation marks omitted).

It would be the truly unique case where forum shopping, absent more, would render a case "exceptional." Forum shopping is hardly uncommon. Nor, as we recognized more than thirty years ago, is it "inherently evil." *Goad v. Celotex Corp.*, 831 F.2d 508, 512 n.12

objectively unreasonable. We disagree. For the reasons explained above, we do not think that Citi Trends' position was objectively unreasonable.

Although it does not affect our perception of the district court's decision in this case, we take note of the fact that despite Coach's protests before the district court that jurisdiction was improper in the Maryland case because there was no controversy over the "sold goods" and that the California case was exclusively about the "seized goods," Coach represented in its brief before us that it might amend its claims in California to cover the "sold goods." Br. at 13. And in fact, Coach has now revived claims about the "sold goods" in the California case. *See Coach, Inc. v. Citi Trends, Inc.*, 2:17-cv-04775-DMG-KS, Statement of Genuine Dispute of Material Facts, ECF No. 81-1 ¶ 8.

12

(4th Cir. 1987) (explaining that "complaints about forum shopping expressly made possible by statute are properly addressed to Congress, not the courts.").

Coach has not cited any case in which forum shopping alone has been held to render a case "exceptional" and so warranting attorney fees. We have found none. The cases that do discuss forum shopping as possibly evidencing "exceptional" conduct are not on all fours with this case. Nonetheless, these cases either hold the parties' forum shopping behavior not "exceptional," *see Par Pharm. v. TWi Pharm., Inc.*, No. CCB-11-2466, 2016 WL 5404546, at \*2 (D. Md. Sept. 27, 2016) (noting "forum shopping" alone did not fall outside the normal conduct by adversaries in litigation), or found ample other evidence of exceptionality, *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 12-256 (RMB/JS), 2015 WL 108415, at \*7 n.7 (D. Del. Jan. 5, 2015) (refusing to rule on the forum shopping as a basis for exceptionality where ample other grounds for exceptionality exist). Moreover, the underlying facts here — that Citi Trends raced to the courthouse to file suit in the district in which the opposing parties are incorporated — suggest neither an "unreasonable" "abuse of process," as Coach contends, nor that this case "stands out from others" and so warrants fees. *Octane Fitness*, 572 U.S. at 554.

For all these reasons, the district court abused its discretion in awarding attorney fees to Coach.

## IV.

Accordingly, the judgment of the district court is

*REVERSED*.

13