[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10048

_____

EMERGENCY RECOVERY, INC., et al.,

Plaintiff-Appellants,

*versus*

BRYAN HUFNAGLE, et al.,

Defendant-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00329-SCB-JSS

_____

Before BRANCH, BRASHER, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Two companies filed a lawsuit in federal court against two of their former employees, who had served in executive positions. The former executives responded by suing the companies in Florida state court. They later moved for summary judgment in the federal action. While that motion was pending, the companies moved for a voluntary dismissal without prejudice of their federal action, which the executives opposed.

The district court granted the companies' motion for voluntary dismissal, and it denied the executives' request for attorney's fees and costs incurred in defending the federal lawsuit to that point. It did so because it thought that the work their attorneys had done in the federal case would be useful in the parallel state court case, which was ongoing. The executives appealed that order, and we vacated it and remanded for the district court to: "address what portion of the work performed by the executives' attorneys in the federal litigation will be useful in the state court litigation, explaining the basis for its decision." *Emergency Recovery, Inc. v. Hufnagle*, 861 F. App'x 355, 361 (11th Cir. 2021). We also asked the district court to then "weigh the equities and decide whether to condition the dismissal on the companies' payment of these expenses." *Id.*

On remand, the district court again granted the voluntary dismissal, stating that the executives could move for fees and costs again if the companies refiled their federal lawsuit against them.

The executives moved to alter or amend that judgment and be awarded fees and costs immediately, which the court denied. This is the executives' appeal. They contend that the district court failed to follow our mandate and abused its discretion when it failed to award them costs and fees immediately. We are not persuaded.

## I.   Background

Emergency Recovery, Inc. (ERI) is a company owned by Bobbie Celler. The company offers medical billing services for healthcare providers. In 2017 ERI hired Bryan Hufnagle as its chief operating officer and Joseph King as its senior vice president of operations. They both signed employment agreements with ERI. Those agreements provided that they would work for ERI as executives for two years, they could be terminated only for just cause, and they would not disclose any of ERI's trade secrets or confidential materials.

In February 2018 ERI agreed to sell its assets to Solatium Healthcare, another company owned by Celler. A few months later, the executives signed new employment agreements with Solatium. The new agreements provided them with higher base salaries and a larger share of the profits than they had received at ERI. The new agreements also included restrictive covenants that barred the executives from working in the field of "third-party insurance billing and third-party insurance collection" for twelve months after their employment with Solatium ended. Although they entered those agreements with Solatium, they never officially worked for that company, and ERI never transferred any assets to

it.  ERI continued to pay the executives' salaries, but it paid them based on the more generous terms of their contractual agreements with Solatium.

In January 2019 the executives were fired.  ERI and Solatium then sued the executives in federal district court, alleging that they had failed to maintain relationships with clients and grow the business and that they disclosed the companies' trade secrets.  The companies asserted claims under federal and Florida law for misappropriation of trade secrets, and they asserted Florida law claims for breach of contract and tortious interference with business relationships.

A few days later, the executives sued the companies in Florida state court.  They requested (1) an accounting from the companies to determine the share of profits they should receive, (2) a declaration that the restrictive covenants in their employment agreements were unenforceable, and (3) a declaration that they had been terminated without just cause and as a result were owed compensation and benefits.

The parties conducted extensive discovery in the federal case.  During the discovery period, the executives moved to compel the companies to identify the trade secrets that had allegedly been shared and to justify their damages calculations.  The district court granted those motions.  Based on the restrictive covenants in the executives' employment agreements with both companies, Solatium sought a preliminary injunction barring them from

working for a competitor.  An evidentiary hearing was held but no ruling was issued.

Following discovery, the executives moved for summary judgment on all of the companies' claims.  The companies eventually responded with a motion for voluntary dismissal of their lawsuit without prejudice.  The executives opposed that motion. They argued, alternatively, that if the court did grant a dismissal without prejudice, the dismissal should be conditioned on payment of their costs and attorney's fees.

The companies replied that they should not have to pay costs and fees because the work done by the executives' attorneys in the federal case "is useful towards the resolution of" the state court case.  The district court granted the companies' motion for voluntary dismissal without prejudice and without conditions under Rule 41(a)(2).  The court concluded that the work the executives' attorneys had performed in the federal case would be useful in the Florida state court case.

The executives moved under Federal Rule of Civil Procedure 59(e) to alter or amend that dismissal order. They contended that not all of their attorneys' work in the federal litigation would be useful in the state court case and that they should therefore receive costs and fees for that work.  The district court denied their motion for reconsideration, and the executives appealed.

A panel of our Court vacated the district court's order that imposed no conditions on the dismissal and remanded the case for

further proceedings.  *Hufnagle*, 861 F. App'x at 361.  The panel did hold that the district court acted within its discretion by granting the voluntary dismissal without prejudice.  *Id.* at 359–60.  But the panel vacated that order anyway and remanded because the district court had adopted the companies' conclusory statement that the work done by the executives' attorneys was useful toward the resolution of the state court case; the court had given no explanation beyond that conclusory statement for not requiring the companies to pay the executives' costs and attorney's fees.  *Id.* at 360–61.

The previous panel explained that: "a single-sentence minute entry that relied on the companies' response to the motion [for reconsideration] to find, once again, that the work performed by the executives' attorneys would be useful in the state court litigation" was not enough.  *Id.* at 360.  And that without further explanation this Court would be "unable to engage in meaningful appellate review of the district court's decision and [we] must remand for the district court to explain [its ruling]."  *Id.* (citing *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012)).  We went on to say:

> Sometimes when a district court fails to explain its reasoning, we nevertheless are able to engage in meaningful review because we can infer from the record the basis for the court's decision.  *See United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004).  But we cannot do so in this case because the record did not include evidence from which the

district court could determine that all the work performed in the federal litigation would be useful in the state court litigation. Indeed, the record contains only minimal information about the state court proceedings. And it contains no time records or other information from the executives' attorneys detailing the work they performed in defending the federal lawsuit. In the absence of a developed record, we cannot discern the basis for the district court's decision that *all* the work the executives' attorneys performed to defend this action would be useful in the state court litigation.

*Id.* at 360–61.

While the record did contain enough to find that some of the work of the executives' attorneys in the federal case would be useful in the state court case, there was not enough overlap to affirm the district court's decision. The problem was that the federal action included some claims the state court action did not. The overlap was not complete. And that prevented "discern[ing] the basis for the district court's determination that work the executives' attorneys undertook to defend against [some of the claims in the federal action] or oppose the motion for preliminary injunction would be useful in the state court action." *Id.* at 361.

The earlier panel vacated the district court's order imposing no conditions on the dismissal and remanded for further proceedings with these instructions:

We therefore vacate the order imposing no conditions on the dismissal and remand for further proceedings.

On remand, the district court should address what portion of the work performed by the executives' attorneys in the federal litigation will be useful in the state court litigation, explaining the basis for its decision. After deciding this question, the district court should weigh the equities and decide whether to condition the dismissal on the companies' payment of these expenses.

*Id.* (citing *McCants v. Ford Motor Co.*, 781 F.2d 855, 860–61 (11th Cir. 1986)).

On remand, the district court followed those instructions. It ordered the parties to submit additional briefing on what portion of the work performed by the executives' attorneys in the federal action would be useful in the state court litigation. The companies, of course, contended that all of the work would be useful in the state court case, but they were forced to admit that their "ability to specifically discuss the work done by [the executives'] counsel [was] limited" because the record lacked evidence of the fees they had incurred. The companies argued that if the court were "inclined to impose the payment of some attorney's fees as a condition for dismissal, the Court should require the payment only upon the refiling of the [federal] action."

The executives again insisted that they should immediately receive attorney's fees and costs arising from the federal action because not all of their attorneys' work would be useful in the state court action. They compared the state and federal cases and asserted that much of the work performed in the federal one would

not be useful in the state one. Finally, the executives argued that because it was unlikely the companies would refile their federal action, payment should not be conditioned on refiling. They asserted that the companies must have moved for voluntary dismissal "out of fear that they would lose on summary judgment," so "[t]here is never going to be a refiled case."

The district court entered an order directing the executives to explain "with specificity how the work done by their attorneys in the instant case that is not useful in the ongoing state court lawsuit would also not be useful if [the companies] decide to refile this [federal] action." The executives answered that much of their attorneys' work was specific to this case, such as the case management report, preparation of and responses to motions in discovery, and time spent in hearings. They again insisted that the district court should require the companies to pay some of their attorney's fees because there would never be a refiled federal case.

On November 1, 2021, the district court entered an amended order on the companies' motion for voluntary dismissal. It reasoned that the executives would not clearly suffer prejudice if the case were dismissed without prejudice "given that at least some of the work done in this case," namely, the work related to the breach of contract claim, "will be of use in the state court lawsuit." The court determined, with the benefit of the additional briefing, that "the breach of contract claims are the extent of the overlap between the federal and state lawsuits."

It concluded that the work the executives' attorneys did for the tortious interference with business relations and misappropriation of trade secrets claims would not be useful in the state court action. And that the same was true of the work done to oppose the companies' motion for a preliminary injunction barring the executives from working for competitors. Given these findings, the district court dismissed the case without prejudice "with the condition that should [the companies] refile this action, [the executives] may move for fees and costs, pursuant to Rule 41(d)."

On November 29, 2021, the executives sought to alter or amend that order of dismissal under Rule 59(e). They asserted that by allowing the executives to move for costs and fees only in the event of a refiled federal action, the court had exceeded the scope of this Court's mandate and imposed an "illusory condition." The condition based on refiling was illusory, the executives argued, because it was so unlikely the companies would ever refile their lawsuit in federal court. The executives asserted that the companies had fled from the federal case in order to avoid an adverse summary judgment ruling, and they pointed out that the statute of limitations was set to run soon (in only 39 days) on the federal trade secrets claims.[1]

---

[1] The statute of limitations on the companies' federal trade secrets claim is three years. 18 U.S.C. § 1836(d). The alleged misuse of a trade secret occurred on January 7, 2019. The companies had 67 days to refile after the district court entered its amended order of dismissal on November 1, 2021.

The companies responded that the executives' motion was procedurally defective.  They contended that a Rule 59(e) motion cannot be used to challenge a Rule 41(a)(2) order of voluntary dismissal without prejudice because the order was not a decision on the merits.  They added that the court did not violate the mandate rule or abuse its discretion in denying the executives an award of costs and fees.

On December 9, 2021, the district court denied the executives' motion to alter or amend the order of dismissal.  The court agreed with the companies that a Rule 59(e) motion could not be used to challenge the order of voluntary dismissal under Rule 41(a)(2) because that order of dismissal was not a decision on the merits.  On January 5, 2022, the executives appealed.

## II.    Standard of Review

We review *de novo* our appellate jurisdiction.  *Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195, 1200 (11th Cir. 2020). We also review *de novo* the district court's interpretation and application of our mandate in a previous appeal.  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018).

We review only for an abuse of discretion an order permitting voluntary dismissal under Rule 41(a)(2) and the denial of a motion for attorney's fees and costs arising from it.  *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1300 (11th Cir. 2019).  "A district court abuses its discretion when it applies an incorrect legal standard, relies on clearly erroneous factual findings, or commits a clear error of judgment."  *Id.*

### III.    Discussion

### A.    Jurisdiction

Jurisdiction is a threshold issue, so we take it up at the threshold of our discussion. *See Haney v. City of Cumming*, 69 F.3d 1098, 1101 (11th Cir. 1995).  The companies say we lack jurisdiction because the appeal was not timely filed.  Their argument is that the executives' motion to alter or amend was not a true Rule 59(e) motion, so it did not toll the time for filing an appeal.

The basic law is that the "timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Green v. Drug Enf't Admin.*, 606 F.3d 1296, 1300 (11th Cir. 2010) (quotation marks omitted).  To be timely, a party generally has 30 days from the district court's entry of the order or judgment being challenged to file the notice of appeal.  Fed. R. App. P. 4(a)(1)(A).  But if a party files a timely motion to alter or amend a judgment under Rule 59, "the time to file an appeal runs for all parties from the entry of the order disposing" of that motion.  Fed. R. App. P. 4(a)(4)(A)(iv).

Here are the dates.  On November 1, 2021, the district court entered its amended Rule 41(a)(2) order granting the companies' motion for voluntary dismissal.  On November 29 the executives filed a motion to alter or amend that order, styled under Rule 59(e).  On December 9 the district court denied that motion, stating that it couldn't be considered a Rule 59(e) motion because a motion under that rule can be used only to challenge a decision on the merits.  According to the district court, the November 29 motion, however styled, challenged only the court's order granting a

motion for dismissal without prejudice under Rule 41(a)(2), which is not a decision on the merits.

The executives appealed on January 5, 2022. That was more than 30 days after the November 1 amended order granting the companies' motion for voluntary dismissal. But it was fewer than 30 days after the December 9 order disposing of the executives' November 29 motion, which they had styled as a Rule 59(e) motion to alter or amend. Whether the executives' notice of appeal was timely filed depends on whether their November 29 motion was truly a Rule 59(e) motion; if so, it tolled the time to file an appeal; if not, then it did not.

Under Rule 59(e), a party may move to "alter or amend a judgment." Fed. R. Civ. P. 59(e). "Rule 59 applies to motions for reconsideration of matters encompassed in *a decision on the merits of the dispute*, and not matters collateral to the merits." *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir. 1988) (emphasis added); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989) ("[A] postjudgment motion will be considered a Rule 59(e) motion where it involves reconsideration of matters properly encompassed in *a decision on the merits*.") (quotation marks omitted) (emphasis added). The companies contend that the district court's Rule 41(a)(2) order entering a voluntary dismissal without prejudice was not a decision on the merits, so the executives' motion could not have been a Rule 59(e) motion. And if it was not a proper motion to alter or amend under Rule 59(e), the filing of it did not toll the time for filing an appeal under Federal Rule of Appellate Procedure

4(a)(4)(A)(iv), which extends the time for filing a notice of appeal until a timely filed Rule 59 motion to alter or amend is ruled on.

That is a good tight syllogism, but the major premise is not true, so the conclusion is not valid. The better syllogism is this: a motion to alter or amend will lie against any order from which an appeal may be filed; an appeal may be filed from a ruling granting a voluntary dismissal without prejudice; therefore, a motion to alter or amend will lie against an order granting a voluntary dismissal without prejudice.

The word "judgment" as used in Rule 59(e) includes "any order from which an appeal lies." *See* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes . . . any order from which an appeal lies."). And the Rule 41(a)(2) order of voluntary dismissal without prejudice was a final, appealable order. *See Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1229 (11th Cir. 2020) ("[A]n order granting voluntary dismissal without prejudice under Rule 41(a)(2) is final and appealable by a defendant who had opposed the plaintiff's motion for voluntary dismissal.") (quotation marks omitted); *McGregor v. Bd. of Comm'rs of Palm Beach Cnty.*, 956 F.2d 1017, 1020 (11th Cir. 1992) ("An order granting a plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2) qualifies as a final judgment for purposes of appeal.") (quotation marks omitted). Because the order of dismissal without prejudice under Rule 41(a)(2) is a final and appealable order, Rule 59 provides an appropriate way to challenge that order. *See* Fed. R. Civ. P. 54(a).

The companies point to decisions stating that "as a general matter, a request for attorney's fees is not part of the merits of the underlying action," so "a request for attorney's fees . . . [is] not a Rule 59(e) motion." *Osterneck*, 489 U.S. at 175. The same is true for costs — "a motion for costs filed pursuant to Rule 54(d) does not seek 'to alter or amend the judgment' within the meaning of Rule 59(e)" because it "raises issues wholly collateral to the judgment in the main cause of action." *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268 (1988).

That is all true enough. But the executives' motion was not a standard post-judgment motion for costs or fees, collateral to the merits of the appeal. Instead, the order of dismissal itself is about whether to award costs and fees. The district court entered the order under our mandate that it "explain[] the basis" for initially denying costs and fees and "weigh the equities and decide whether to condition the dismissal on the companies' payment of these expenses." Unlike *Osterneck* and *Buchanan*, the judgment from which this appeal lies is wrapped up in whether to award costs and fees — to borrow a phrase from another area of the law, the two are inextricably intertwined. And the executives' motion concerns the merits of that judgment — the district court's decision to deny costs and fees — not matters "wholly collateral to the judgment" being appealed. *Cf. Buchanan*, 485 U.S. at 268. So *Osterneck* and *Buchanan* do not control here.

After all, we have previously determined that a motion was a proper Rule 59(e) one notwithstanding that it challenged only an

order granting attorney's fees. In *McGregor* the district court entered a voluntary dismissal without prejudice but retained jurisdiction to award costs and fees. 956 F.2d at 1019. It later entered an order awarding the defendant attorney's fees. *Id.* The plaintiff filed a timely Rule 59(e) motion to alter or amend the judgment awarding attorney's fees. *Id.* at 1020. We concluded that the Rule 59(e) motion tolled the time to file an appeal. *Id.* at 1021.

The motion in this case is similar to the one in *McGregor*; if anything, this one is even more closely related to the merits of the dismissal order than the one there. In *McGregor* the order granting attorney's fees was separate from the order of dismissal; here it's all one order. We conclude that the executives' motion was a Rule 59(e) motion to alter or amend the judgment, which means the district court's finding that the motion was not a Rule 59(e) one was error. And because the executives timely appealed the denial of their Rule 59(e) motion, we have jurisdiction.[2]

---

[2] The companies also contend that the district court's determination that the executives' motion to alter or amend was not a motion under Rule 59(e) is the "law of the case." They assert that in the executives' opening brief to us they did not challenge the district court's determination, so we are bound by it. "Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (quoting *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 250 (D.C. Cir. 1987)). But the executives asserted in their opening brief that their motion was a Rule 59(e) motion. And even if they had not, the law of the case doctrine does not force us to ignore a conclusion that is clearly incorrect as a matter of law. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003) (explaining

### B.    Merits

Having determined that we have jurisdiction, we turn to the merits of the executives' appeal.  They first contend that the district court failed to follow our mandate on remand.  Specifically, they argue that the court should not have considered whether the work performed by the executives' attorneys would be useful if the companies refiled the case in federal court and should not have conditioned any possible award of costs or fees on a potential refiling.  The executives also contend that the district court abused its discretion because it denied them an immediate award of costs and attorney's fees and didn't explain how their interests would be protected by that decision.  We address each argument in turn.

### 1.    Whether the district court followed our mandate

We first consider whether the district court properly followed our mandate when it conditioned the possible award of

---

that the law of the case doctrine does not apply where "the initial decision was clearly erroneous and would work manifest injustice") (quotation marks omitted).  More importantly perhaps, the law of the case doctrine applies to courts of appeals decisions, not to district court decisions, and it does not concern itself with what is or isn't in a brief. *See Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990) ("Under the law of the case doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (quotation marks omitted).

the executives' costs and fees on the companies' refiling of the federal lawsuit.  The court did.

"The law of the case doctrine and the mandate rule ban courts from revisiting matters decided expressly or by necessary implication in an earlier appeal of the same case." *Winn-Dixie Stores*, 881 F.3d at 843 ("The mandate rule is a specific application of the 'law of the case' doctrine which provides that subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals.") (quotation marks omitted). District courts must follow our "clear and precise" instructions. *See id*. They "cannot amend, alter, or refuse to apply an appellate court's mandate simply because an attorney persuades the court that the decision giving rise to the mandate is wrong, misguided, or unjust." *Id*. at 844.

Although "a mandate is completely controlling as to all matters within its compass," a district court remains "free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers*, 460 F.2d 105, 107 (5th Cir. 1972).[3]  The mandate rule does not apply "when the issue in question was outside the scope of the prior appeal." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1332 (11th Cir. 2005).  So a district court

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

on remand is "free to address, as a matter of first impression, those issues not disposed of on appeal." *Id*. at 1331.

Here the district court properly followed our mandate. To reiterate, the mandate instructed the district court to:

> [A]ddress what portion of the work performed by the executives' attorneys in the federal litigation will be useful in the state court litigation, explaining the basis for its decision. After deciding this question, the district court should weigh the equities and decide whether to condition the dismissal on the companies' payment of these expenses.

*Hufnagle*, 861 F. App'x at 361. On remand, the district court did address "what portion of the work performed by the executives' attorneys in the federal litigation will be useful in the state court litigation." The court found that the only work that would be useful in the state court litigation was the work that the executives' attorneys had done on the breach of contract issue. But after weighing the equities, the court decided not to condition the dismissal on the immediate payment of the costs and fees incurred in any work. Instead, the court chose a different approach: it explained that if the companies refiled the federal lawsuit, the executives "may move for fees and costs, pursuant to Rule 41(d)." Our mandate gave the district court every right to condition the dismissal that way.

That's because the issue of whether to award costs and fees in a future refiled case was not before us in the first appeal, so it wasn't the subject of our mandate. We neither expressly nor

implicitly decided whether an award of the executives' costs and fees should be granted if the companies refiled this federal lawsuit. Our mandate did not forbid the district court from awarding costs and fees — either immediately or upon a future motion after refiling — nor did it require the court to award costs and fees.

In fact, the district court would not have violated our mandate even if it had denied costs and fees altogether, regardless of whether the federal case was refiled, so long as the court had (1) identified the portion of the executives' attorneys' work on the federal litigation that would not be useful in the state court case, and (2) weighed the equities to determine whether to condition the dismissal on the companies' payment of that portion of the executives' costs and fees. Its decision might or might not have been subject to attack as an abuse of discretion, but it would not have been a violation of our mandate.

Our remand instructions did not preclude the court from doing exactly what it did: conditioning the voluntary dismissal without prejudice on the executives being able to move for costs and fees if the companies refiled. Because our remand instructions were broad enough to encompass the condition the district court chose to impose, the court did not exceed the scope of our mandate. *See AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1271 (11th Cir. 2009) (noting that the district court did not exceed the mandate where this Court had "decided nothing expressly or by necessary implication about the district court's power to grant" other relief).

### 2.    Whether the district court abused its discretion

The next issue is whether the court, even though it did not violate the remand mandate, abused its discretion by allowing the dismissal to be without prejudice subject only to the condition imposed.  It didn't.

When granting a voluntary dismissal, "the district court must exercise its broad equitable discretion under Rule 41(a)(2) to weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *McCants*, 781 F.2d at 857; *see also* Fed. R. Civ. P. 41(a)(2) (providing that a court may enter a voluntary dismissal "on terms that the court considers proper"). And under Rule 41(d)(1), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court . . . may order the plaintiff to pay all or part of the costs of that previous action." Fed. R. Civ. P. 41(d)(1).

A court entering a voluntary dismissal without prejudice should seek to protect the defendant's interests, and the defendants here are the executives.  *See McCants*, 781 F.2d at 856 ("[A] district court considering a motion for dismissal without prejudice should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect.").  One way to protect a defendant's interest is by conditioning a voluntary dismissal on the plaintiff's payment of the defendant's costs and fees.  "Where the 'practical prejudice' of expenses incurred in

defending the action can be 'alleviated by the imposition of costs or other conditions,' the district court does not abuse its 'broad equitable discretion' by dismissing the action without prejudice." *Pontenberg v. Bos. Sci. Corp.*, 252 F.3d 1253, 1260 (11th Cir. 2001) (quoting *McCants*, 781 F.2d at 859). But it does not follow that a court always abuses its discretion if it grants a dismissal without prejudice and does not immediately impose costs and fees on the plaintiff.

We have said that a "plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial, except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation." *McCants*, 781 F.2d at 860. But "ordinarily" is not "always," and there is more than one way to protect the interests of a defendant who objects to a plaintiff being allowed to dismiss its lawsuit without prejudice. When a later, similar lawsuit between the parties is also involved, "expenses awarded might be limited to those incurred in discovering information and researching and pressing legal arguments that will not be useful in the later suit." *Id.*

Delaying the payment of the defendant's costs and fees until the plaintiffs refile their case, if they do, can also adequately protect defendants. *See Versa Prods., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1328 (11th Cir. 2004) (noting that a condition that a plaintiff, "upon refiling, pay the fees and costs incurred by" the defendant "is plainly intended to protect [the defendant] from the unfairness of

duplicative litigation"). For example, in *Pontenberg* we recognized that conditioning a voluntary dismissal without prejudice on the plaintiff's payment of the defendant's costs if the plaintiff refiled could "adequately address[]" any "financial prejudice" the defendant suffered. 252 F.3d at 1260. In *Pontenberg*, the defendant argued that dismissal without prejudice was inappropriate because "it had invested considerable resources, financial and otherwise, in defending the action, including by preparing the then pending summary judgment motion." *Id.* at 1256. We stated that the dismissal without prejudice was within the district court's discretion "particularly" because the court had conditioned it on the payment of costs if the plaintiff were to refile, which protected the interests of the defendant. *Id.* at 1260.

Here, the executives argue that the district court abused its discretion by conditioning the dismissal on the possible payment of their fees and costs if the companies refile because it is so unlikely that the companies will refile. The executives argue that unlikelihood makes the condition "illusory." They assert that because the statute of limitations on some of the claims in the federal litigation was set to expire "in a matter of weeks," this case is distinguishable from *Pontenberg* and *Versa Products*, where we upheld conditions like the one the district court imposed here.

Not so. In *Pontenberg* and *Versa Products*, the defendants had incurred costs defending the claims against them and were not guaranteed any later recoupment of those costs. *See Versa Prods.*, 387 F.3d at 1328; *Pontenberg*, 252 F.3d at 1256, 1260. The same is

true here. The district court didn't abuse its discretion by entering the voluntary dismissal without prejudice and denying the executives an immediate award of costs and fees, even though they incurred some expense while defending the federal litigation and even though they may never be reimbursed for it.

That's because in this context protecting a defendant's interest is about protecting a defendant from having to defend duplicative litigation, not about protecting a defendant from having to pay to defend the first-filed lawsuit. *See Versa Prods.*, 387 F.3d at 1328; *Pontenberg*, 252 F.3d at 1258 (explaining that Rule 41(a) "allows the court to prevent prejudice to the defendant in such cases by attaching conditions to the dismissal"); *McCants*, 781 F.2d at 860 (noting that the court can impose monetary or "non-monetary conditions designed to alleviate the prejudice the defendant might otherwise suffer"); *cf. Fisher v. P.R. Marine Mgmt., Inc.*, 940 F.2d 1502, 1502–03 (11th Cir. 1991) ("[W]e have said that in most cases a voluntary dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit . . . ."). We recognized that principle in *Versa Products* when we explained that a future payment condition helps protect the defendant against "the unfairness of duplicative litigation." 387 F.3d at 1328. Here, there was even greater protection from the threat of duplicative litigation. The statute of limitations was going to run on the federal trade secrets claims shortly after the order of dismissal was entered. *See* 18 U.S.C. § 1836(d). And those claims were the sole basis the plaintiffs asserted for federal jurisdiction.

The executives insist that the reason the companies abandoned their federal lawsuit was that they realized they were going to lose it.  But that argument makes the executives' position weaker because it means the companies were less likely to refile the federal case, which makes it less likely that the executives would incur additional costs and fees from federal litigation.  Combine that with the imminent running of the statute of limitations on the sole asserted basis for federal jurisdiction, and this dismissal is like the one in the *Mickles* case.  *See Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018). As we explained there: "Where a dismissal without prejudice has the effect of precluding a plaintiff from refiling his claim due to the running of the statute of limitations, the dismissal is tantamount to a dismissal with prejudice." *Id.* (quotation marks omitted).  And if the voluntary dismissal without prejudice is in effect a dismissal with prejudice, the executives were exposed to less "practical prejudice" than in those cases where the plaintiffs had more time to refile before the statute of limitations ran or where the plaintiffs were more likely to refile than the plaintiffs in this case are.

On the same subject, the executives insist: "Now that the statute of limitations has expired, a remand to require the district court to explain its reasoning would be useless and moot, as there can be no future federal case."  That is a self-destructive argument. If, as the executives insist, there is not going to be a future federal case, they will not have to incur any duplicative costs and fees defending one.  And that means there is no basis for ordering the plaintiff companies to pay costs and fees as a condition of

dismissing this litigation. The purpose of conditioning a dismissal without prejudice on payment of costs and fees is not to punish the dismissing plaintiff but to protect the defendants from having to pay twice to defend against the same claims in federal court. Here there was no need to do that because, as the defendant executives themselves stress, there was not going to be a future federal case. (And, as predicted, there wasn't one.)

Finally, the executives argue that the district court abused its discretion by failing to explain its reasoning for deferring the possible payment of costs and fees to a hypothetical refiled federal case. But the district court did explain the reasoning behind its decision. It's undisputed that the executives incurred considerable fees and expenses litigating the federal lawsuit. With the benefit of additional briefing on remand, the court determined that the work their attorneys devoted to the breach of contract question is the only work that would be useful in the state court case. It concluded that the rest of the work would be useful only if the plaintiffs refiled their case; the court cited *Pontenberg* and *Versa Products* for the proposition that it was within the court's discretion to condition the dismissal on payment of costs and fees if the plaintiffs refiled. The court explained that this condition "offered [the executives] protection from unfairness and [the companies] are not prejudiced in their right to renew their litigation." That reasoning is clear enough, although it was not what the executives were hoping to hear.

The district court sufficiently protected the executives from the prejudice of duplicative litigation by essentially inviting them to move for payment of their costs and fees if the companies ever refiled their federal lawsuit. The court adequately explained its reasoning for granting the dismissal without prejudice on that condition. In all aspects of the decision, the court acted within its discretion. *See generally Friends of the Everglades*, 678 F.3d at 1201 ("We will find an abuse of discretion only when a decision is in clear error, the district court applied an incorrect legal standard or followed improper procedures, or when neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review.").

**AFFIRMED.**