[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

————————————————

No. 22-13412

————————————————

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

JONATHAN E. PERLMAN,
Receiver for Securities and Exchange Commission,

Interested Party-Appellee,

*versus*

TCA FUND MANAGEMENT GROUP CORP., et al.,

Defendants,

ELEANOR FISHER,
TAMMY FU,

2                    Opinion of the Court                    22-13412

as Joint Official Liquidators of TCA Global Credit
 Fund, Ltd.,

                                        Intervenors-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-21964-CMA

_____

Before ROSENBAUM, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

This case requires us to determine whether Appellants Eleanor Fisher and Tammy Fu, the joint official liquidators of TCA Global Credit Fund, Ltd., timely appealed the district court's order on the distribution plan to resolve claims against TCA Fund Management Group Corp. and TCA Global Credit Fund GP, Ltd.

When the district court entered its order on the distribution plan, it also stayed enforcement to give Appellants time to seek appellate review before the initial distribution. And when Appellants sought a further stay through a Rule 59(e) motion, the district court readily granted the additional time. Appellants now seek appellate review of the district court's order on the distribution plan.

The Receiver moves to dismiss this appeal, arguing that Appellants, who waited until after they filed their Rule 59(e) motion to file their notice of appeal, filed their notice of appeal too late. Appellants respond that their Rule 59(e) motion for a stay extended the time to appeal.

After a thorough review of the record and relevant law, we agree with the Receiver. Though Appellants styled their motion as a Rule 59(e) motion, in substance, the motion was not such a motion. So it did not toll the time for appealing as a true Rule 59(e) motion would have. As a result, Appellants filed their notice of appeal late, and we must dismiss this appeal as untimely.

## I. BACKGROUND

### A.    *The Civil Enforcement Action and Receivership*

On May 11, 2020, the Securities and Exchange Commission ("Commission") brought this action against TCA Fund Management Group Corp. ("TCA") and TCA Global Credit Fund GP, Ltd., (together, "Defendants") for various violations of federal securities laws. The Commission alleged that Defendants engaged in fraudulent revenue-recognition practices to inflate the net asset values of TCA Global Credit Fund, LP ("Feeder Fund LP"), TCA Global Credit Fund, Ltd. ("Feeder Fund Ltd."), and TCA Global Credit Master Fund, LP ("Master Fund"), and to inflate the profitability of Master Fund. Feeder Fund LP, Feeder Fund Ltd., and Master Fund are the Relief Defendants in this action. All Defendants and Relief Defendants are registered in the Cayman Islands, except TCA, which is a Florida corporation.

The same day that the Commission commenced this action, it also filed an unopposed motion for judgment and appointment of a receiver for the Defendants and Relief Defendants. The district court entered judgment for the Commission and appointed Jonathan E. Perlman as the Receiver.

### B.    The Liquidation Proceedings in the Cayman Islands

But a month before the Commission began this action, on April 1, 2020, another petitioner initiated the winding up and liquidation of Feeder Fund Ltd., one of the Relief Defendants, in the Grand Court of the Cayman Islands. That court appointed Eleanor Fisher and Tammy Fu as Feeder Fund Ltd.'s joint official liquidators and foreign representatives. Then, on May 13, 2020, the Cayman Islands court ordered that Feeder Fund Ltd. be wound up and liquidated in accordance with the Cayman Islands Companies Act.

Several months later, Appellants filed a petition with the Bankruptcy Court for the Southern District of Florida to obtain recognition of the Cayman Islands proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, under Chapter 15 of the Bankruptcy Code.

Then, the Receiver and Appellants filed a joint motion with the District Court for the Southern District of Florida seeking to withdraw the reference of the Chapter 15 case from the bankruptcy court to the district court; to enter an agreed order granting recognition of the liquidation proceeding as a foreign nonmain proceeding; and to recognize Appellants as the foreign representatives of Feeder Fund Ltd. The district court granted the joint motion.

### C.    The Distribution Plan

Several months later, the Receiver filed a Motion for Approval of Distribution Plan and First Interim Distribution. In this motion, the Receiver identified the following: 1,485 investors in the receivership entities who collectively invested $1,161,425,343 through Feeder Fund Ltd. and Feeder Fund LP; 565 net winners who withdrew more than they invested on an aggregate cash basis; and 920 net losers who invested $675,517,494 and withdrew $296,162,750 for an aggregate loss of $379,354,744. Of the net losers, the Receiver identified 31 unpaid subscribers, or investors who made subscription payments to Feeder Fund Ltd. but didn't receive investment interests; and 50 investors who submitted redemption requests totaling $44,201,902 to the feeder funds before Feeder Fund Ltd. and Feeder Fund LP sent out wind-up letters.

The Receiver proposed an initial distribution to the 764 unsubordinated net losers who had recovered less than 23.05% of the amount they had invested, totaling $55,584,886 and increasing each of these investors' recovery to 23.05% of the amount they had invested. This proposed distribution plan made no initial distribution to the 108 unsubordinated net losers who had recovered at least 23.05% of the amount they had invested; the 48 subordinated net losers; and the 565 net winners. In short, the Receiver proposed that funds be distributed to unsubordinated investors on a pro rata, rising-tide basis in accordance with federal principles of equity.

Appellants objected to the proposed distribution plan and argued that Cayman Islands law should govern the distribution.

After a hearing, on August 4, 2022, the district court granted the Receiver's motion in part and overruled Appellants' objection. But the district court "stayed [the order] until September 6, 2022[,] to allow the filing of an interlocutory appeal."

On September 1, 2022, Appellants filed a Rule 59(e) motion to alter or amend the Distribution Plan Order. That motion sought "to maintain the status quo for the full 60-day period afforded [the Appellants] to perfect their appeal to the Eleventh Circuit under Fed. R. App. P. 4(a)(1)(B)(ii), plus an additional ten (10) days within which to seek a stay pending such appeal pursuant to Fed. R. App. P. 8, each calculated from entry of the original Distribution Order [on August 4, 2022,] so as to expire on October 13, 2022, without prejudice to their right to seek, and of any party to oppose, the entry of a formal stay pending appeal pursuant to Fed R. App. P. 8." The district court granted this motion the next day.

On October 12, 2022, Appellants filed their Notice of Appeal from the Distribution Plan Order, as amended by the September 2, 2022, Order.

## II. STANDARD OF REVIEW

We review *de novo* our appellate jurisdiction. *Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195, 1200 (11th Cir. 2020) (citing *Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir. 2019)).

### III. DISCUSSION

The Receiver moves to dismiss this appeal for lack of jurisdiction because, he asserts, Appellants didn't file a timely notice of appeal.[1]  For the reasons that follow, we grant the Receiver's motion and dismiss this appeal.

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement."  *Bowles v. Russell*, 551 U.S. 205, 214 (2007).  In cases where, as here, an agency of the United States is a party, the party seeking appellate review must file its notice of appeal within 60 days after entry of the judgment or order being appealed.  Fed. R. App. P. 4(a)(1)(B); 28 U.S.C. § 2107(b)(2).  The clock begins to run the day after entry of the judgment or order.  Fed. R. App. P. 26(a)(1).  But a timely filed motion to alter or amend a judgment under Rule 59(e) tolls the time to appeal.  *Green v. Drug Enf't Admin.*, 606 F.3d 1296, 1300 (11th Cir. 2010) (citing Fed. R. App. P. 4(a)(4)(A)).

Here, the district court entered its order approving the distribution plan on August 4, 2022.  In that Order, the district court *sua sponte* stayed enforcement until September 6, 2022, which gave Appellants 33 days to file an interlocutory appeal before the Receiver could make an initial distribution.  To "maintain the status quo" while they prepared their appeal, Appellants moved the district court to alter or amend its August 4 Order to extend the stay

---

[1] The Commission did not take a position on this motion.

of its August 4 Order to October 13, 2022.[2]  The district court granted the requested relief on September 2, 2022.  Forty days later, and 69 days after the August 4 Order, Appellants filed their Notice of Appeal.

The Receiver contends that Appellants filed their Notice of Appeal too late because (1) the August 4 Order became appealable on August 4, 2022; and (2) Appellants' Motion to Alter or Amend the August 4 Order didn't reset the clock on Appellants' time to appeal.  So according to the Receiver, Appellants should have filed their Notice of Appeal by October 3, 2022.

First, as to the August 4 Order, the Receiver argues that this Order was immediately appealable as a collateral order.  *Securities & Exchange Comm'n v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019).  And while he notes that the district court concluded the August 4 Order by stating that it "[wa]s stayed until September 6, 2022[,] to allow the filing of an interlocutory appeal," he contends that the stay didn't change the date on which the 60-day period started to run.

Appellants do not dispute that the distribution order was immediately appealable under the collateral-order doctrine.  And indeed, the August 4 Order was immediately appealable as a collateral order.  The Order approved, in part, the Receiver's distribution

---

[2] Appellants calculated that the district court should extend the stay to 70 days to account for the 60-day period to appeal under Rule 4(a)(1)(B)(ii) and to give them an additional 10 days to seek a stay pending appeal under Rule 8.

plan. We have settled that a district-court order approving a receiver's distribution plan in an SEC civil-enforcement action is appealable as a collateral order. *Torchia*, 922 F.3d at 1315–16. Thus, the August 4 Order approving the Receiver's distribution plan in relevant part was a collateral order that was immediately appealable. *See Fla. Wildlife Fed'n, Inc. v. Adm'r, U.S. E.P.A.*, 737 F.3d 689, 693 (11th Cir. 2013) (per curiam) (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)).

Second, the Receiver asserts that Appellants' Motion to Alter or Amend the August 4 Order didn't reset the clock on the 60-day period to appeal. He concedes that the motion invoked Rule 59(e) and was styled as a Rule 59(e) motion. But he argues that the motion was not "in substance or function" a Rule 59(e) motion because it didn't seek reconsideration of any of the substantive matters raised in the August 4 Order.

Appellants counter that the district court's granting of their Rule 59(e) motion reset the clock. In Appellants' view, in that motion, they sought to correct an error of law in the August 4 Order. They reason that the district court "clearly intended" for the stay to cover the full 60-day period to appeal since the Order would be unreviewable if the Receiver distributed the funds before appeal. Fed. R. App. P. 4(a)(1)(B).

We agree with the Receiver. Ordinarily, a timely Rule 59(e) motion suspends the time to appeal, and an order disposing of that motion restarts the appeal clock. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). But for a motion and the later order on that motion

to have this effect, the motion must seek reconsideration of the merits of the district court's original decision.  *See White v. N.H. Dep't. of Emp. Sec.*, 455 U.S. 445, 451 (1982) ("[T]he federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits." (citing *Browder v. Dir., Ill. Dep't of Corr.*, 434 U.S. 257 (1978))).

We look beyond the styling and form of the motion to its substance to determine whether we should construe the filing as a Rule 59(e) motion.  *Compare Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268–69 (1988) (per curiam) (holding that "a request for costs raises issues wholly collateral to the judgment in the main cause of action, issues to which Rule 59(e) was not intended to apply," and that an "inaccurate designation of their costs request as a Rule 59(e) motion cannot change this fact"), *with Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1131 (11th Cir. 1994) (holding that a motion to change a dismissal without prejudice to a dismissal with prejudice was a Rule 59(e) motion because that type of motion seeks a "*change* in the judgment," not merely a change in "what was due *because* of the judgment" (quoting *White*, 455 U.S. at 452)).

To illustrate this inquiry, we review two decisions concerning motions for attorney's fees styled as Rule 59(e) motions. In *White*, the Supreme Court considered whether the petitioner's post-judgment motion for attorney's fees constituted a Rule 59(e) motion.  *White*, 455 U.S. at 450.  In that case, the petitioner moved for attorney's fees under 42 U.S.C. § 1988 more than four months after the district court approved the consent decree and entered

judgment. *Id.* at 447–48. The district court granted the motion, but the court of appeals reversed, holding that the petitioner's motion for attorney's fees constituted a Rule 59(e) motion to alter or amend the judgment and therefore was untimely. *Id.* at 448–49. The Supreme Court rejected this conclusion, reasoning that the post-judgment motion for attorney's fees raised legal issues "collateral to the main cause of action," such as the determination of the prevailing party under 42 U.S.C. § 1988, and required that the courts consider the matter "separate from the decision on the merits." *Id.* at 451–52.

Under other circumstances, though, a post-judgment motion for attorney's fees may constitute a Rule 59(e) motion. In *Emergency Recovery, Inc. v. Hufnagle*, we considered a fee motion on a different procedural journey. *See Emergency Recovery, Inc. v. Hufnagle*, 77 F.4th 1317 (11th Cir. 2023). In that case, the appellants had moved for attorney's fees in response to the appellees' motion for voluntary dismissal, which followed extensive discovery and summary-judgment briefing. *Id.* at 1321. The district court dismissed the action and denied the fee request, explaining that the work completed in the federal case would be useful in the ongoing state-court proceedings. *Id.* at 1322. We vacated the order and remanded for the district court to explain how the work done in the federal case would be useful in the state-court case. *Id.* at 1322–23. On remand, the district court again dismissed the action and denied fees, prompting the appellants to file a Rule 59(e) motion requesting that the court reconsider its decision on fees. *Id.* at 1323–24. On appeal for a second time, we held that the motion was, in fact,

a Rule 59(e) motion because it asked the district court to reconsider the substance of its order of dismissal, which was about whether to award fees. *Id.* at 1326–27. As this pair of cases illustrates, context matters.

We have never decided whether we should construe a motion to alter or amend a judgment to stay that judgment as a Rule 59(e) motion. With the benefit of some guidance from caselaw about whether other motions styled as motions to reconsider qualify as Rule 59(e) motions, we conclude for three reasons that Appellants' stay motion did not involve "reconsideration of matters properly encompassed in a decision on the merits." *White*, 455 U.S. at 451.

First, Appellants' motion "requir[ed] an inquiry that was wholly 'separate from the decision on the merits.'" *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989) (quoting *White*, 455 U.S. at 451-52). To decide Appellants' motion, the district court considered only the Federal Rules of Appellate Procedure: Rule 4, which gave Appellants 60 days to appeal the August 4 Order; and Rule 8, which permitted Appellants to seek a stay of the August 4 Order pending appeal. Appellants' motion raised those same grounds and no others. By contrast, the district court considered a comity question and evaluated a proposed distribution plan to reach its August 4 Order. Appellants' motion therefore involved an entirely different inquiry than did the August 4 Order.

Second, Appellants' motion didn't involve a matter that was part of the cause of action at issue in the August 4 Order. *See*

*Osterneck*, 489 U.S. at 174 (citing *White*, 455 U.S. at 452). In *White*, the Supreme Court held that attorney's fees under 42 U.S.C. § 1988 were "separable" from the underlying cause of action because attorney's fees are not compensation for the injury that courts assess in the underlying cause of action. *White*, 455 U.S. at 452. Here, too, the issue of whether to stay enforcement of the August 4 Order is "separable" from the underlying merits. To determine the appropriate distribution plan, the district court needed to evaluate whether the distribution plan that the Receiver proposed was "fair and reasonable" given the circumstances. So the merits of the Order did not encompass the stay inquiry, as we've described above.

Third, other provisions in the Federal Rules of Civil Procedure distinguish between the matters in Appellants' motion and the August 4 Order. *See Osterneck*, 489 U.S. at 174-75 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 268 (1988)). Here, Appellants correctly stated in their motion that the Federal Rules of Appellate Procedure governed their time to file an appeal, with Rule 4 setting forth their time to file and Rule 8 controlling their ability to seek a formal stay pending appeal from the appellate court. By contrast, to examine the proposed distribution plan, the district court had "summary jurisdiction over [the] receivership proceedings" and could "deviate from the Federal Rules of Civil Procedure in favor of exercising its 'broad powers and wide discretion to determine relief[.]'" *Torchia*, 922 F.3d at 1316 (citations omitted).

Although Appellants styled their motion as a Rule 59 motion, "nomenclature is not controlling." *Lucas v. Fla. Power & Light*

*Co.*, 729 F.2d 1300, 1302 (11th Cir. 1984) (internal quotation marks omitted) (quoting *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983)).  We must look to the type of relief requested to determine whether to treat Appellants' motion as a Rule 59(e) motion for which the time to appeal is extended.  *See White*, 455 U.S. at 451–52.  Because Appellants' motion sought consideration of a matter outside the merits of the district court's August 4 Order, we cannot treat the motion as a Rule 59 motion.  As a result, this appeal is not timely.

## IV. CONCLUSION

For the foregoing reasons, we dismiss this appeal as untimely.

**DISMISSED.**